# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 101

### APRIL TERM, A.D. 2014

### August 12, 2014

CIRCUIT COURT OF THE EIGHTH
JUDICIAL DISTRICT,

Appellant
(Defendant),

v.

LEE NEWSPAPERS, dba The Casper
Star-Tribune, The Douglas Budget, L.P.
dba, The Douglas Budget and The
Glenrock Independent, The Wyoming
Press Association, and The Associated
Press,

Appellees
(Plaintiffs).

S-14-0015

*Appeal from the District Court of Converse County*
*The Honorable Keith G. Kautz, Judge*

*Representing Appellant:*
Peter K. Michael, Wyoming Attorney General; Martin L Hardsocg, Deputy
Attorney General; Cathleen D. Parker, Senior Assistant Attorney General.
Argument by Ms. Parker.

*Representing Appellees:*
Bruce T. Moats, Law Office of Bruce T. Moats, P.C., Cheyenne, Wyoming.

*Before BURKE, C.J., and, HILL, KITE,\* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    The Circuit Court of the Eighth Judicial District (circuit court) closed the court proceedings in a juvenile sexual assault case and sealed the court file, purportedly in accordance with Wyo. Stat. Ann. § 6-2-319(a) (LexisNexis 2013).  The circuit court denied existence of the case file, and barred the news organizations (appellees) from attending any court proceedings.  The appellees moved to intervene to gain access to information pertaining to the case, but the defendant was bound over to district court before the circuit court ruled on the motion.  The appellees then filed a declaratory judgment action in the district court.  The district court found that the circuit court erred when it closed the court proceedings and denied existence of the case file.  We affirm.

## ISSUES

[¶2]    1.  Have the parties presented a justiciable controversy?

2.  Did the circuit court violate the United States Constitution when it closed the court proceedings and sealed the court records?

3.  Did the circuit court correctly interpret Wyo. Stat. Ann. § 6-2-319(a)?

## FACTS

[¶3]    In May 2012, the Converse County Sheriff's Department issued an AMBER Alert, notifying the public that a minor child had been reported missing, and requesting assistance in finding the child.  The sheriff's department publicly released the name of the minor in an attempt to find her.  A man was later arrested and charged with sexual assault of a minor in connection with the AMBER Alert and the missing child.  Following the arrest, the Chief Deputy County Attorney of Converse County requested that the circuit court restrict disclosure of information related to the case in accordance with Wyo. Stat. Ann. § 6-2-319(a).  Without a hearing or findings on the record, the circuit court granted the request by sealing all case files and barring public attendance at all circuit court proceedings.

[¶4]    Wyo. Stat. Ann. § 6-2-319(a) provides:

> Prior to the filing of an information or indictment in district court charging a violation of an offense under this article, neither the names of the alleged actor or the victim of the charged offense nor any other information reasonably likely to disclose the identity of the victim shall be released or negligently allowed to be released to the public by any public

1

employee except as authorized by the judge with jurisdiction over the criminal charges.  The actor's name may be released to the public to aid or facilitate an arrest.

[¶5]    The statute only applies "[p]rior to the filing of an information or indictment in district court," Wyo. Stat. Ann. § 6-2-319(a), during the short time it takes the circuit court to hold a preliminary hearing and determine whether probable cause exists to commence further proceedings.  Wyo. Stat. Ann. § 5-9-132(b) (LexisNexis 2013); W.R.Cr.P. 5.1(a).  Once that determination is made, the circuit court either binds the defendant over to district court, or dismisses the case altogether.  W.R.Cr.P. 5.1(b), (c).

[¶6]    Following the circuit court's closure of the court proceedings and sealing of the case file, *The Casper Star-Tribune*,[1] aware of the case through the AMBER Alert and other sources, filed a motion to intervene, requesting that the circuit court unseal the case file and open any court proceedings to the public.  The following day, the defendant waived the preliminary hearing, and the case was bound over to the district court before the circuit court ruled on the newspaper's motion.

[¶7]    The *Casper Star-Tribune*, along with other news agencies (collectively the appellees), then filed a declaratory judgment action in the district court "seeking a ruling on whether Wyo. Stat. Ann. § 6-2-319(a) required the closure of records and proceedings in cases alleging sexual assault."  The parties stipulated to the facts of the case, and the district court granted summary judgment to the appellees, holding that Wyo. Stat. Ann. § 6-2-319(a) does not require either the records or the court proceedings be closed. The district court found that a redacted case file would serve to both protect the parties involved in the action and provide information to the public.  The district court went on to recognize that the circuit court can conduct public hearings by using initials for the alleged victim and defendant, again serving the dual purpose of protecting the parties and allowing such court proceedings to be open to public scrutiny.  The circuit court timely appealed.

[¶8]    The appellees do not challenge the circuit court's confidential treatment of the victim's identity, nor do they dispute that the statute prohibits the circuit court from releasing the name of the alleged actor.  The issue before us is how far a circuit court may go to prevent the release of the accused's name before it runs afoul of the First Amendment.  Our opinion, therefore, focuses on the constitutional limits to the statutory protections afforded to the alleged actor charged with sexual assault under Wyoming statute Title 6, Article 3.

---

[1] The *Casper Star-Tribune* is a newspaper of general circulation in Converse County, Wyoming, and is owned by Lee Publications, Inc., a Delaware corporation authorized to do business in Wyoming.

## STANDARD OF REVIEW

[¶9]     Our standards for reviewing the district court's order granting summary judgment are well established. We treat the summary judgment movant's motion as though it has been presented originally to us. We use the same materials in the record that was before the district court. Using the materials in the record, we examine them from the vantage point most favorable to the nonmoving party opposing the motion, giving that party the benefit of all favorable inferences which may fairly be drawn from the materials. . . . We review questions of law *de novo* without giving any deference to the district court's determinations.

*Bangs v. Schroth*, 2009 WY 20, ¶ 20, 201 P.3d 442, 451-52 (Wyo. 2009) (internal citations omitted). Constitutional challenges present issues of law which we review *de novo*. *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 17, 275 P.3d 438, 447 (Wyo. 2012).

## DISCUSSION

### I.     *Have the parties presented a justiciable controversy?*

[¶10] The circuit court asserts this case is moot because "[t]he transcripts of any hearings in front of the Circuit Court are available." The appellees claim that the controversy remains as the transcripts of the hearing held in circuit court have not been released. The record is unclear on this factual issue. However, regardless of whether the transcripts were made available to the appellees, we find that this case presents a justiciable controversy.

The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties."

*Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1143 (Wyo. 1999) (citations omitted).

3

[¶11] If the transcripts have not been made available, the controversy continues, and there remains an available remedy for the appellees – namely, access to the transcript.[2] *See Williams v. Stafford*, 589 P.2d 322, 326 (Wyo. 1979) (In cases where a proceeding is closed erroneously, the court "should release the record of the proceedings to the public."), *abrogated on other grounds in Vaughn v. State*, 962 P.2d 149, 151-52 (Wyo. 1998). Our decision in this matter would impact the parties as it would provide relief to appellees by ensuring that they secure the transcript to the circuit court proceedings.

[¶12] If the transcript has, in fact, been made available to the appellees, the case may be rendered moot. We generally dismiss such cases for lack of a justiciable controversy. *In Interest of AJ*, 736 P.2d 721, 723 (Wyo. 1987) ("Courts do not sit for the purpose of expounding the law upon abstract questions, but to determine the rights of litigants by the rendition of effective judgment."). However, "[t]he rule that a case must be dismissed when it becomes moot is not absolute." *Operation Save Am.*, 2012 WY 51, ¶ 22, 275 P.3d at 448. We have decided a technically moot issue when: (1) the issue is one of great public importance; (2) we have deemed it necessary to provide guidance to state agencies and lower courts; or (3) the "controversy is capable of repetition yet evading review." *Id.* at ¶¶ 22-23, at 448-49. In this case, all three exceptions apply.

[¶13] The issues before us implicate the First Amendment of the United States Constitution, demonstrating the public importance of such a dispute. *See id.* at ¶ 26, at 449 ("As a starting point, the case concerns a fundamental constitutional right[.]"). Moreover, the accessibility of the judiciary is of considerable public concern as public access ensures that the constitutionally protected right to discuss governmental affairs remains free and open. *See Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604-05, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982) ("Underlying the First Amendment right of access to criminal trials is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.'" (citation omitted)). Without public participation in our judiciary, the check on that branch of government would be stilted, endangering both the judicial process and those who come before our courts. *See Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 12-13, 106 S.Ct. 2735, 2742, 92 L.Ed.2d 1 (1986) (*Press-Enterprise II*) (finding that the public provides a check on "overzealous prosecutor[s]" and "biased, or eccentric judge[s]"). The issues presented here are of great public concern and importance.

[¶14] We also find it important to provide some direction to the lower courts of this state concerning the application of Wyo. Stat. Ann. § 6-2-319(a). As the appellees point out,

---

[2] We recognize this remedy would not solve the problem of timeliness, as "[n]othing is so stale as yesterday's news." *Kates v. United States*, 930 F. Supp. 189, 193 (E.D. Pa. 1996).

4

the administration of this statute is far from uniform. The circuit court has also requested that we provide guidance to the various lower courts on this issue. Our ruling will ensure uniformity in the statute's application throughout the state.

[¶15] Finally, this case presents a controversy "capable of repetition yet evading review." *Operation Save Am.*, 2012 WY 51, ¶ 23, 275 P.3d at 449. Under this exception to the mootness doctrine, two requirements must be met: "First, the duration of the challenged action must be too short for completion of litigation prior to its cessation or expiration. Second, there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *In re Guardianship of MEO*, 2006 WY 87, ¶ 28, 138 P.3d 1145, 1154 (Wyo. 2006) (quoting *Grant v. Meyer*, 828 F.2d 1446, 1449 (10th Cir. 1987)). The time period when the circuit court has jurisdiction over a felony case is, necessarily, short. Wyo. Stat. Ann. § 6-2-319(a) (applying only "[p]rior to the filing of an information or indictment in district court"). As a result, by the time a member of the public makes a request for access to the proceedings in circuit court, it is very likely that the matter will have already been bound over to the district court, as was the case here. Circuit courts, without guidance, may close future sexual assault cases, thereby subjecting the appellees to precisely the same action presented here. *See Press-Enterprise II*, 478 U.S. at 6, 106 S.Ct. at 2739 (finding that a closure order during a preliminary hearing was a controversy capable of repetition yet evading review).

[¶16] Because this case satisfies each exception to the mootness doctrine, it presents a justiciable controversy and we proceed to resolve the issues raised.

## II. Did the circuit court violate the United States Constitution when it closed the court proceedings and sealed the court records?

### A. Judicial Proceedings

[¶17] In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the United States Supreme Court first recognized a First Amendment right of access to criminal trials. *Id.* at 580, 100 S.Ct. at 2829. Finding that First Amendment guarantees implicitly encompassed the right to attend criminal trials, a plurality of the court stated, "[T]he First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors[.]" *Id.* at 577, 100 S.Ct. at 2827. The Court went on to expand the right of access in criminal proceedings in *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, where it found unconstitutional a state statute that required the wholesale closure of trials for sex offenses involving minor victims. 457 U.S. at 602, 610-11, 102 S.Ct. at 2618, 2622. Two years later, in *Press-Enterprise Co. v. Superior Court of California* (*Press-Enterprise I*), 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the United States

5

Supreme Court found that voir dire during a criminal trial is protected by the First Amendment right of access. *Id.* at 510-13, 104 S.Ct. at 824-26.

[¶18] In *Press-Enterprise II*, the Court held the First Amendment right of access applies to preliminary hearings, stating, "the First Amendment question cannot be resolved solely on the label we give the event, *i.e.*, 'trial' or otherwise, particularly where the preliminary hearing functions much like a full-scale trial." 478 U.S. at 7, 106 S.Ct. at 2740. The Court then went on to analyze the history of preliminary hearings to determine whether such proceedings were traditionally open to the public. *Id.* at 8, 106 S.Ct. at 2740. Exploring as far back as the treason trial of Aaron Burr, the Court found that from that time to the present, the practice has been to conduct preliminary hearings in the public realm. *Id.* at 10-11, 106 S.Ct. at 2741-42. Its historical examination led the Court to conclude, "Open preliminary hearings . . . have been accorded 'the favorable judgment of experience.'" *Id.* at 11, 106 S.Ct. at 2742 (quoting *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. at 605, 102 S.Ct. at 2619).

[¶19] The United States Supreme Court then looked to whether public participation during preliminary hearings provides a positive and significant role in the functioning of such hearings. The Court placed considerable weight upon the fact that preliminary hearings lack juries, thus, an open court proceeding acts as a safeguard against "overzealous prosecutor[s]" and "biased[] or eccentric judge[s]." *Id.* at 12-13, 106 S.Ct. at 2742. The Court also discussed the value that open court proceedings provide to the public at large, explaining, "Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility. 'When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions.'" *Id.* at 13, 106 S.Ct. at 2742-43 (quoting *Press-Enterprise I*, 464 U.S. at 509, 104 S.Ct. at 823). The Court concluded, as we do, that public participation in preliminary hearings provides a significant and positive role on the functioning of the judiciary. *Id.* at 12-13, 106 S.Ct. at 2742.

## B. Judicial Documents

[¶20] While not specifically finding that the First Amendment right to access attaches to judicial documents, the United States Supreme Court has observed, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records[.]" *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Additionally, numerous federal courts have affirmed the right of public access to judicial documents pursuant to the First Amendment. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (holding that docket sheets "enjoy a presumption of openness" under the First Amendment); *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002) ([T]he constitutional right to access criminal court proceedings "extends to documents and

6

kindred materials[.]"); *United States v. Antar*, 38 F.3d 1348, 1359-60 (3d Cir. 1994) (right of access extends to transcript of voir dire); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("The First Amendment presumes that there is a right of access to proceedings and documents[.]"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989) ([A] blanket prohibition on access to judicial records and proceedings violates the First Amendment[.]); *In re Search Warrant*, 855 F.2d 569, 573 (8th Cir. 1988) (finding that the First Amendment right of access extends to documents filed in support of search warrant applications). We likewise conclude that the First Amendment right of access attaches to judicial documents.

[¶21] The United States Supreme Court has identified "two complementary considerations" when addressing whether a judicial proceeding carries with it a First Amendment right of access.[3] *Press-Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740. The Court first looks to whether the proceedings or documents have historically been open to the general public. *Id.* (citing *Globe Newspaper Co.*, 457 U.S. at 605, 102 S.Ct. at 2619 and *Richmond Newspapers*, 448 U.S. at 589, 100 S.Ct. at 2834 (Brennan, J., concurring in judgment)). Second, the Court considers "whether public access plays a significant positive role in the functioning of the particular process [or document] in question." *Id.* at 8, 106 S.Ct. at 2740. This is known as the test of experience and logic. *Id.* at 9, 106 S.Ct. at 2740. If the documents meet the requirements of this test, a First Amendment right of access attaches. *Id.*

[¶22] We turn, first, to the historical treatment of criminal case documents.[4] The First Circuit's discussion in *Globe Newspaper Co. v. Pokaski*, is apt:

> That it could be suggested that our historical tradition has not been one of presumptive openness seems inconsistent with the historical materials available to the framers of the Constitution. Not only did the Philadelphia library used by the delegates to the Convention contain some sixty-three pamphlets reproducing the proceedings of mainly political prosecutions in England but it also held the ten volume set of Emlyn's enlargement of Salmon's State Trials, recounting

---

[3] The same analysis can be applied to the issue of whether the First Amendment right of access applies to judicial documents. *See Hartford Courant Co.*, 380 F.3d at 94-96 (applying the test in determining whether the right of access applies to docket sheets); *see also In re Search Warrant*, 855 F.2d at 573-74 (applying the complementary considerations in determining whether the right of access applies to documents filed in support of search warrant applications).

[4] The parties have failed to specify which documents, aside from the transcript of the hearing in front of the circuit court, were withheld. As a result, our analysis is, of necessity, general. However, the general nature of our reasoning does not imply that each and every document in a criminal case is subject to the First Amendment right of access.

> centuries of treason, heresy and sedition trials. The use made of these materials both by the delegates to the Constitutional Convention and by the Congress in deliberations leading to the Bill of Rights indicates the value placed on access to records of secretive criminal proceedings.

868 F.2d at 503. History and tradition support ensuring judicial documents remain open to the general public, including the press.

[¶23] Second, we look to whether allowing public access will significantly and positively affect the judicial process. *Press-Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740. In *Globe Newspaper Co. v. Superior Court of Norfolk County*, the United States Supreme Court noted that open criminal trials provide "a check on the judicial process – an essential component in our structure of self-government." 457 U.S. at 606, 102 S.Ct. at 2620. Specifically, the press plays a vital role in disseminating information to the general public concerning the judiciary and what occurs in its domain. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491-92, 95 S.Ct. 1029, 1044-45 (1975). "[T]he press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice." *Id.*; *see also Richmond Newspapers*, 448 U.S. at 572-73, 100 S.Ct. at 2825, ("Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. In this sense, this validates the media claim of functioning as surrogates for the public."). Public access to judicial documents serves to broaden the dissemination of information thereby allowing the general public to guard against malfeasance in our criminal justice system. *Antar*, 38 F.3d at 1359. The public provides a significant and positive influence when judicial documents remain open. *Press-Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740. Because, as a general matter, criminal judicial documents meet the experience and logic test, a First Amendment right of access attaches to such documents. *Id.*

[¶24] This, however, is not the end of the United States Supreme Court's inquiry in such cases, nor is it the conclusion of ours. The First Amendment right of access is not absolute. *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. at 606, 102 S.Ct. at 2620. In some limited circumstances, the public and the press can be barred from attending judicial proceedings and, likewise, can be precluded from viewing judicial records. *Id.* However, the presumption of openness may only be overcome by a demonstration that there is a compelling interest which makes closure "essential to preserve higher values," and that any closure is narrowly tailored to serve that compelling interest. *Press-Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. Moreover, when a court determines that a compelling interest exists, the court must articulate findings, on the

8

record, "specific enough that a reviewing court can determine whether the closure order was properly entered."[5] *Id.*

[¶25] In this case, the circuit court failed to articulate, on the record, any findings as to the compelling interest for closing and sealing the case. The circuit court argues on appeal that it was required to close the case in order to comply with state statute, to protect both the victim and the defendant from public scrutiny. The United States Supreme Court has recognized that the desire to protect juvenile sexual assault victims from the additional physical and psychological intrusion that sometimes comes with a public trial is a compelling interest. *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. at 607, 102 S.Ct. at 2620. However, the appellees only challenge the circuit court's justification in acting to protect the identity of the accused, and we agree there is a less compelling interest in protecting the identity of the alleged actor than there is in protecting that of the victim. This Court has been unable to locate any case in which protecting the identity of a person accused of sexual assault constituted a compelling interest. Regardless of whether this matter can be considered a compelling interest, the circuit court failed to articulate any finding on the record as to why this case was required to be sealed and closed. A reviewing court has no way to determine whether the closure was essential to preserve a compelling interest, or whether the closure was narrowly tailored without findings from the lower court. The presumption of openness has, therefore, not been overcome. *Press-Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. The circuit court violated the First Amendment when it closed the court proceedings and sealed the court records.

### III. Did the circuit court correctly interpret Wyo. Stat. Ann. § 6-2-319(a)?

[¶26] Wyo. Stat. Ann. § 6-2-319(a) states:

> (a)  Prior to the filing of an information or indictment in district court charging a violation of an offense under this article, neither the names of the alleged actor or the victim of the charged offense nor any other information reasonably

---

[5] We do not address the constitutionality of categorical document redactions such as those set forth in Rule 6 of the Rules Governing Redactions from Court Records or Federal Rule of Criminal Procedure 49.1. *See* Rules Governing Access to Court Records. In enacting Rule 49.1, the Supreme Court was responding to a 2002 mandate from Congress to provide rules related to e-filing which permitted "the redaction of certain categories of information in order to protect privacy and security concerns." 44 U.S.C. § 3501(c)(3) (2012); *see also* 28 U.S.C. § 2072(a) (2012) (The Supreme Court is charged with the duty of prescribing "general rules of practice and procedure and rules of evidence for cases in the United States district courts . . . and courts of appeals."). Congress has prohibited the Supreme Court from prescribing rules deemed unconstitutional. 28 U.S.C. § 2072(b) (2012) ("Such rules shall not abridge . . . any substantive right.").

likely to disclose the identity of the victim shall be released or negligently allowed to be released to the public by any public employee except as authorized by the judge with jurisdiction over the criminal charges. The actor's name may be released to the public to aid or facilitate an arrest.

[¶27] The circuit court apparently determined that the statute required the court to seal the criminal case file and close all proceedings held in its courtroom, without a hearing or findings on the record. However, "to so read the statute would be to disregard the elementary principle that it will not be presumed that the legislature intended to enact a law in violation of constitutional restrictions." *Hanson v. Town of Greybull*, 63 Wyo. 467, 479, 183 P.2d 393, 379 (Wyo. 1947). As we have made clear, we will not interpret a statute to create an unconstitutional result if it can be avoided. *State ex. rel. Wyo. Workers' Comp. Div. v. Brown*, 805 P.2d 830, 856 (Wyo. 1991); *Holm v. State*, 404 P.2d 740, 741 (Wyo. 1965).

[¶28] The district court found that a redacted case file would suffice to ensure compliance with the statute. But, the circuit court argues against a redacted case file as the risk of mistakenly revealing prohibited information is increased by the escalation of paperwork that a redacted case file would create. We find the district court's interpretation creates a constitutional outcome which still ensures compliance with the statute. Courts around the state regularly keep redacted and unredacted case files in the offices of the various clerks in order to comply with state statutes, judicial mandates, and judicial rules. *See e.g.,* Rules Governing Redactions from Court Records 6-8; Rules Governing Access to Court Records. Redacting a case file may pose a higher risk of mistake, but that does not warrant a complete abridgment of the public's First Amendment right of access by sealing case files wholesale. *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) ("[T]he public's right to inspect judicial documents may not be evaded by the wholesale sealing of court papers.").

[¶29] The circuit court also interpreted Wyo. Stat. Ann. § 6-2-319(a) to require closure of the judicial proceedings held in its courtroom. In essence, the circuit court alleges that the court proceedings were required to be closed because if the proceedings were open, there would be a risk that someone from the public would recognize the defendant and thus discover his name, violating § 6-2-319(a). However, if a person from the public came to the hearing, saw the defendant and recognized him, it would not be the circuit court who had released the defendant's name to the public, and there would be no statutory violation.

10

[¶30] Wyo. Stat. Ann. § 6-2-319(a) only precludes the circuit court from releasing the alleged actor's name.[6] The statute distinguishes between the alleged actor and the victim, stating "neither the names of the alleged actor or the victim" may be disclosed, and further, "nor any other information reasonably likely to disclose the identity of the **victim**." Wyo. Stat. Ann. § 6-2-319(a) (emphasis added). In enacting the statute, the legislature provided additional protection to the victim which it conspicuously neglected to provide to the accused. This omission unmistakably limits the protection provided to an accused under § 6-2-319(a).

[¶31] We understand the circuit court's concern that its employees may be subjected to criminal consequences should a violation of the statute occur. However, this concern does not justify the wholesale closure of all court proceedings. The circuit court may effectively shield employees from inadvertent violations of the statute by issuing an order setting forth the procedure to be utilized when dealing with sexual assault cases in its court.

[¶32] The statute makes clear that identifying information may be disclosed if "authorized by the judge with jurisdiction over the criminal charges." Wyo. Stat. Ann. § 6-2-319(a). The circuit court argued that it lacked jurisdiction over the criminal charges and, thus, lacked the ability to issue an order allowing the dissemination of the information arguably precluded from disclosure by Wyo. Stat. Ann. § 6-2-319(a). The circuit court does, in fact, have jurisdiction over the criminal charges while the case is pending before the circuit court.

[¶33] "'Jurisdiction' refers to 'a court's adjudicatory authority.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160, 130 S.Ct. 1237, 1243, 176 L.Ed.2d 18 (2010) (citation omitted). There are two types of jurisdiction – personal jurisdiction and subject matter jurisdiction. *Id.* at 160-61, 130 S.Ct. at 1243. Personal jurisdiction refers to the power of a court to make an adjudication applicable to a person, while subject matter jurisdiction refers to the power of a court to hear and determine certain classes of cases. *Id.* Subject matter jurisdiction is at issue here.

[¶34] "Subject-matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceedings in question belong. Subject-matter jurisdiction is essential to the exercise of judicial power. If a court does not have subject-matter jurisdiction, it lacks any authority to proceed." *Christiansen v. Christiansen*, 2011 WY 90, ¶ 4, 253 P.3d 153, 155 (Wyo. 2011) (internal citations omitted).

---

[6] Name means, "A word or words by which an entity is designated and set apart from others." *Webster's II New College Dictionary* 743 (3d ed. 2005). Identity is defined as, "The collective aspect of characteristics by which a thing is distinctly recognizable or known." *Id.* at 562.

11

[¶35]  The Wyoming legislature has granted circuit courts jurisdiction over specific cases and hearings (for example, "Circuit courts have original jurisdiction in all misdemeanor criminal cases."  Wyo. Stat. Ann. § 5-9-129 (LexisNexis 2013)).  And, while district courts retain jurisdiction over felony cases,[7] the legislature has explicitly provided that circuit courts rule over preliminary examinations.  "Preliminary examinations for persons charged with a felony shall be conducted by the circuit court judge or magistrate."  Wyo. Stat. Ann. § 5-9-132(b); *see also* Wyo. Stat. Ann. § 7-8-105 (LexisNexis 2013) ("In all cases triable in district court, except upon indictment, the defendant is entitled to a preliminary hearing.").[8]  The circuit court has the power to hear and decide whether probable cause exists to move forward on a criminal information.  W.R.Cr.P. 5.1(a)-(c).  If the circuit court did not have subject matter jurisdiction, it would lack the authority to proceed with the preliminary examination and either bind the case over to the district court or dismiss for lack of probable cause.  The circuit court, therefore, has subject matter jurisdiction over the proceedings at the preliminary examination stage.

[¶36]  Because circuit courts have jurisdiction over the proceedings at the preliminary examination stage until the case is bound over to district court, they also have the authority to issue orders governing their practices relating to the release of the accused's name in sexual assault cases, and thereby insulate circuit court employees from the possible penalties associated with Wyo. Stat. Ann. § 6-2-319(a), as well as to provide guidance to comply with both statutory and constitutional law.

[¶37]  With regard to the judicial documents, to comply with the statute without running afoul of the constitutional right of access to information, circuit courts should keep a redacted case file and docket sheet available to the public in sexual assault cases.  The name of the accused should either be completely redacted or represented by initials.  Attorneys filing documents in the case should provide the clerk's office with redacted and unredacted versions of each filing to ensure confidentiality as required by the statute.  Understandably, the circuit court is concerned that when employees are asked by the public to see a case file by name, they will be revealing the name of the defendant by acknowledging that such a file exists.  To avoid this trap, when a member of the public asks for a case file by name, the circuit court employee may ask what kind of case that person is requesting.  If the member of the public states that it is a sexual assault case, the circuit court employee can provide that person with the redacted docket sheet and ask which redacted case file he or she would like to see.  In this way, the circuit court

---

[7] "Circuit courts do not have original jurisdiction over felony cases." *Blanton v. State*, 2008 WY 27, ¶ 10, 178 P.3d 410, 413 (Wyo. 2008).

[8] The Wyoming Rules of Criminal Procedure further solidify the circuit court's power to hear and adjudicate during the preliminary hearing stage.  Rule 5.1(a) states, "In all cases required to be tried in the district court, except upon indictment, the defendant shall be entitled to a preliminary examination in the circuit court."

employee is not acknowledging that such a case exists based on the name of the defendant. Instead, it is the member of the public who chooses the specific case file.

[¶38] The proceedings, like judicial documents, must generally remain open to the public. To avoid revealing the name of the defendant during a hearing, the circuit court judge or magistrate may use initials in the place of the name when required to name the defendant in open court.

[¶39] As a general matter, then, both proceedings and judicial documents in sexual assault proceedings must remain open, with the foregoing limits to ensure compliance with state statute. If the circuit court believes there is a compelling interest in further limiting the information available to the public, it must first hold a hearing at which members of the public have been given the opportunity to refute any allegations that the case must be closed. Following the hearing, the circuit court must find that there is a compelling interest in closing the court proceedings and sealing the case file which is essential to preserve higher values, and that any action taken is narrowly tailored to serve that compelling interest. *See* Rules Governing Access to Court Records; *Press-Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824. These specific findings must be made on the record to allow a reviewing court to determine whether the order was properly entered. *Id.* Only then may the presumption of openness be overcome.

## *CONCLUSION*

[¶40] We affirm the district court's grant of summary judgment to the appellees.