# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 4

OCTOBER TERM, A.D. 2015

**January 7, 2016**

KATHY S. CROFTS,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF GAME AND FISH,

Appellee
(Respondent).

S-15-0090

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
   Bruce S. Asay and Greg B. Asay of Associated Legal Group, LLC, Cheyenne, Wyoming. Argument by Greg Asay.

*Representing Appellee:*
   Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Elizabeth C. Gagen, Senior Assistant Attorney General. Argument by Ms. Gagen.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Kathy Crofts appeals from the Office of Administrative Hearings' (OAH) finding that good cause supported two suspensions and her dismissal by the Wyoming Game and Fish Department (Game & Fish).  Ms. Crofts claims she was denied pre-deprivation due process and that the OAH did not have jurisdiction to hear her case because her supervisors did not have authority to issue her suspensions.  Ms. Crofts did not raise these issues below.  We conclude her due process claim is not of such a fundamental nature that it may be raised for the first time on appeal, and that, because the question of her supervisors' authority is not jurisdictional and was not raised below, we will not hear it now.  We affirm.

## ISSUES

[¶2]    1.   May Ms. Crofts raise the issue of deprivation of her procedural due process rights for the first time on appeal?

      2.   Did the OAH lack jurisdiction over Ms. Crofts' personnel appeal?

## FACTS

[¶3]    Kathy Crofts was a long-term Game & Fish employee.  At all relevant times, Ms. Crofts was a wildlife investigator based in Cody, and was entitled to the protections provided to full-time, permanent employees by the State of Wyoming's Personnel Rules.

[¶4]    Ms. Crofts was issued a one-day suspension without pay on October 13, 2011.  That suspension was based upon Ms. Crofts' insubordinate behavior during a September 8, 2011, mid-term performance evaluation meeting with her immediate supervisor, Mike Ehlebracht, and other unprofessional behaviors that Mr. Ehlebracht had addressed during that meeting (including improperly completed travel vouchers and Daily Activity Record (DAR) entries, rude behavior toward the public, and overtime misuse).  Mike Choma, Mr. Ehlebracht's immediate supervisor, investigated the conduct and issued the notice of disciplinary suspension.  The notice of suspension was hand-delivered at 4:00 p.m. on October 13 and Ms. Crofts served the suspension the next day.

[¶5]    Ms. Crofts filed a grievance concerning the October 13, 2011, suspension on October 27, 2011.  In that grievance, Ms. Crofts claimed that the suspension was issued without cause.  She did not question the notice provided to her or Mr. Choma's authority to issue the suspension.

[¶6]    On April 27, 2012, Game & Fish issued Ms. Crofts a three-day suspension, again without pay.  This suspension arose from Ms. Crofts' behavior in conjunction with a joint investigation with U.S. Forest Service Special Agent Bragonier.  Ms. Crofts and Special

1

Agent Bragonier had investigated a Wyoming outfitter regarding several alleged unlawful behaviors. Ms. Crofts and Special Agent Bragonier had agreed upon the violations to be charged in state court and those to be filed in federal court. Despite their understanding and contrary to their agreement, state citations were issued on two charges that effectively precluded the federal charges. When he confronted Ms. Crofts about this, she told Special Agent Bragonier that it was "luck" that the Park County Deputy Attorney chose to prosecute those charges. However, when Special Agent Bragonier questioned him, the attorney told him that Ms. Crofts had specified which state charges should be pursued and which could be dismissed. As a result, Special Agent Bragonier submitted a written complaint to Mr. Ehlebracht questioning Ms. Crofts' credibility and stating that he had no desire to work any further investigations with her.

[¶7] Mr. Ehlebracht investigated the complaint and concluded that Ms. Crofts had misled Special Agent Bragonier and then lied to him to cover it up. The three-day disciplinary suspension without pay was based upon the results of this investigation, past behaviors, and personnel rule violations. The letter notifying Ms. Crofts of the suspension was signed by Mr. Ehlebracht and delivered to Ms. Crofts on Friday, April 27, 2012. She began serving the suspension the following Monday.

[¶8] Ms. Crofts filed a grievance concerning the April 27, 2012, three-day disciplinary suspension on May 3, 2012. That grievance challenged the factual allegations contained in the suspension notice, and contended that the suspension was in retaliation for her filing the first grievance and charges of discrimination that she had previously filed before the Equal Employment Opportunity Commission. The grievance did not mention the notice provided to her or Mr. Ehlebracht's authority to sign the letter issuing the suspension.

[¶9] Ms. Crofts returned to work on May 3, 2012, and was immediately placed on administrative leave, this time with pay, and was given notice of intent to dismiss. John Kennedy, the Deputy Director of Internal Operations for Game & Fish, issued this notice of intent to dismiss Ms. Crofts based upon a number of items, including prior misconduct, unsatisfactory work performance history, incapacity to perform assigned duties, her likely inability to testify in future cases due to her disciplinary record, and her behavior surrounding the Ten Sleep case. Ms. Crofts' participation in the Ten Sleep case resulted in U.S. Fish and Wildlife Senior Special Agent Armstrong's complaints that "the success of the investigation was frequently in jeopardy due to [Ms. Crofts'] refusal to recognize [her] own faults and amend [her] behavior to what was expected . . ."; that Ms. Crofts incorrectly and inaccurately documented information in her reports; and stating that he would prefer not to work with her in the future.

[¶10] In addition, because of Ms. Crofts' prior suspensions, the attorney prosecuting the case determined that her testimony would raise *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) issues, bringing into question her credibility as a

witness, and thus, he elected not to call her as a witness in the trial, which was to be held in Casper. Ms. Crofts was advised by the attorney that she would not testify as a result of pending disciplinary matters. The day before trial was to start, Ms. Crofts left Cody, heading to Casper. At 8:30 that morning, Mr. Ehlebracht phoned the Cody office and got no answer; he then called Ms. Crofts' cell phone, spoke to her about the trial, and directed her to stay in Cody. She questioned his decision several times and did not tell him she was on her way to Casper. Mr. Ehlebracht emailed Ms. Crofts and got no response. He then called her again at 8:50 and asked where she was and what she was doing. At that time, Ms. Crofts admitted that she was three-and-a-half hours out of Cody en route to Casper. He told her to return to Cody and answer his email when she got there. She did not respond to the email until 2:59 p.m.

[¶11] On May 16, 2012, Ms. Crofts filed a written response to the notice of intent to dismiss in which she argued that the intent to dismiss was taken in retaliation for her complaint of a hostile work environment; her grievance concerning the October 13, 2011, disciplinary suspension; her discrimination and hostile work environment claim; and the decision of the state human resources manager to go forward with her grievance. She contended that her April 27, 2012, suspension was retaliatory, and that all of the disciplinary actions were instigated by Mr. Ehlebracht to set the stage for allegations of dishonesty and ultimately her termination. In addition, she contested the factual bases for the termination. On May 25, 2012, Mr. Kennedy issued his letter terminating Ms. Crofts' employment.

[¶12] Ms. Crofts timely appealed her dismissal to the OAH. In her Petition for Personnel Appeal Hearing before the OAH, Ms. Crofts alleged:

> a. That there is no cause for her dismissal, and that the grounds alleged for her dismissal were fabricated to provide otherwise non-existent cause for her dismissal.
> b. That the dismissal and disciplinary suspensions were taken in retaliation for:
>    i. Her having filed a formal complaint within the Department alleging hostile work environment sexual harassment.
>    ii. Her having grieved the October 13, 2011 Disciplinary Suspension without Pay.
>    iii. Her having filed a Charge of Discrimination pursuant to Title VII of the Civil Rights Act of 1964 on December 22, 2011.
>    iv. The April 4, 2012 decision of the Human Resources Manager to allow her grievance of the October 13, 2011 disciplinary action to go forward.

v. Her initial grievance of the April 27, 2012 Disciplinary Suspension without Pay.
vi. Her alleging retaliation in her *Response to the Notice of Intent to Dismiss* and her grievance of the April 27, 2012 disciplinary action.
c. That the retaliatory disciplinary actions including her discharge violate both Chapter 12, § 1 of the Personnel Rules for the State of Wyoming[1] and Title VII of the Civil Rights Act of 1964.

In her prehearing memorandum/disclosures, she stated: "The sole issue is whether there was just cause for her termination[,]" and "Petitioner does not anticipate any amendments to pleadings."

[¶13] The OAH held a week-long administrative hearing of Ms. Crofts' consolidated appeals of the three disciplinary actions (the October 13, 2011 suspension, the April 27, 2012 suspension, and the May 25, 2012 dismissal). The hearing examiner determined that "good cause" supported the disciplinary actions and that they were supported by substantial evidence.

[¶14] Ms. Crofts timely appealed the hearing examiner's decision to the district court, which affirmed the OAH findings. This appeal followed. She raises these issues:

I. Did the agency action violate the Appellant's right to due process infringing on Appellant's fundamental rights including her right to pursue a career of her choosing?

II. Did the hearing examiner lack jurisdiction to determine whether the agency had good cause, as the suspensions and termination of the Appellant were void ab initio?

***DISCUSSION***

### I. May Ms. Crofts raise the issue of deprivation of her procedural due process rights for the first time on appeal?

[¶15] Wyoming Rule of Appellate Procedure 12.09(a) limits an appellate court's review of administrative action to "issues set forth in the petition and raised before the agency." Accordingly, we have routinely held that, with the exception of jurisdictional or certain fundamental issues, issues raised for the first time on appeal from an administrative

---

[1] Chapter 12, Section 1 of the Personnel Rules in effect at the time relates to the grievance procedure. State of Wyoming Personnel Rules, ch. 12, § 1 (effective December 7, 2001).

decision will not be considered. *State ex rel. Dep't of Family Servs. v. Kisling*, 2013 WY 91, ¶ 14, 305 P.3d 1157, 1162 (Wyo. 2013); *BP Am. Prod. Co. v. Dep't of Revenue*, 2006 WY 27, ¶ 18, 130 P.3d 438, 462 (Wyo. 2006).

[¶16] Ms. Crofts argues that she raised the issue of deprivation of procedural due process at the administrative hearing, and that, to the extent she did not raise it, she was prevented from doing so by the OAH hearing examiner. Our review of the record reveals that Ms. Crofts did not raise the issue in her Petition for Personnel Appeal Hearing. In her petition, Ms. Crofts generally denied the factual allegations underlying her suspensions and dismissal; she claimed that the agency lacked cause and that the dismissal and suspensions were retaliatory. Ms. Crofts did not raise the procedural due process issue in her Prehearing Memorandum and Prehearing Disclosures, or in her proposed Findings of Fact, Conclusions of Law and Order.

[¶17] Prior to the OAH hearing, Game & Fish filed a motion in limine to restrict evidence at the hearing to the issues pled and contested by Ms. Crofts. In granting that motion, the hearing examiner noted that "Crofts did not file a formal response to the motion[,]" and concluded that "no procedural issues have been raised or pled by the parties and will not be considered at the hearing."

[¶18] Ms. Crofts argues that her testimony at the hearing on Mr. Ehlebracht's authority to issue disciplinary suspensions was sufficient to preserve her procedural due process issue. However, the testimony she cites has no relation to Ms. Crofts' contention that she was denied procedural due process. Rather, it goes only to the separate issue of authority to suspend, which we address below. We find no indication in the record that Ms. Crofts raised the issue of procedural due process at any time during the OAH proceedings.

[¶19] "This court has taken a dim view of a litigant trying a case on one theory and appealing it on another. . . . Parties are bound by the theories they advanced below." *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004) (citation omitted). There is a sound basis for our general rule "that we will not consider claims raised for the first time on appeal." *Id.* We follow this rule because "it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 2015 WY 22, ¶ 28, 343 P.3d 783, 791 (Wyo. 2015) (quoting *Bredthauer v. TSP*, 864 P.2d 442, 446-47 (Wyo. 1993)). "This rule is equally applicable to appeals from administrative decisions as to those from district courts." *Kisling*, 2013 WY 91, ¶ 14, 305 P.3d at 1162 (citation omitted). "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts." *Id.* (citation omitted).

[¶20] Ms. Crofts argues that the issue "is of such a fundamental nature that it must be considered" even though it is raised for the first time on appeal, citing *Kordus v. Montes*, 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014). Ms. Crofts equates fundamental rights, which she claims to be at issue here, with issues that are of "such a fundamental nature" they must be considered on appeal. *Id*. The fundamental rights at issue in her case, Ms. Crofts contends, are her right to due process, to her protected property interest in continued employment, to pursue a livelihood, to pursue a common calling, and to ply her chosen trade. These rights fall into two categories: her property interest in continued employment, and her liberty interest in her good name.

[¶21] Game & Fish contends the only issue implicated in Ms. Crofts' allegation that she was not provided with pre-deprivation notice and a hearing is the issue of procedural due process, which is not a fundamental right. Game & Fish points out that the full post-deprivation hearing resulted in a finding that Ms. Crofts did in fact engage in the misconduct alleged by Game & Fish, and it contends it is that determination that has interfered with Ms. Crofts' job prospects, not the absence of notice. At oral argument, Game & Fish also asserted that Ms. Crofts had no liberty interest because she had a property interest, and the two were mutually exclusive.[2]

[¶22] As we have observed, a solid definition of "fundamental" has proven elusive:

> Perhaps we should have been more specific when using the word "fundamental" in prior opinions. *Compare Frank* [*v. State By and Through the Wyo. Bd. of Dental Exam'rs*], 965 P.2d [674,] 679 [(Wyo. 1998)] ("'there is no fundamental interest involved in the practice of medicine . . . or any other profession'"), *with Slagle v. Wyoming State Board of Nursing*, 954 P.2d 979, 982 (Wyo. 1998) ("Slagle's license to practice—a property right—and her right to earn a living—a liberty interest—are so fundamental that such rights cannot be restricted by agency action without the agency first giving notice of the alleged grounds for sanctions").

*Painter v. Abels*, 998 P.2d 931, 940 (Wyo. 2000).

---

[2] Game & Fish cites no authority, and we find none, for the proposition that the two interests are mutually exclusive. Property and liberty interests are frequently implicated together. *See, e.g., Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526-28 (10th Cir. 1998) (property and liberty interest in tenured teacher's employment context). We do not consider contentions unsupported by cogent argument or valid authority. *In re Gen. Adjudication of All Rights to Use Water in Big Horn River System*, 2015 WY 104, ¶ 24, 355 P.3d 1222, 1228 (Wyo. 2015).

[¶23] On the specific question of what issues are of such a fundamental nature as to allow us to consider them for the first time on appeal, we have also recognized a lack of clarity:

> Our case law does not define with precision what issues are of "such a fundamental nature that they must be considered." [*Byrd v. Mahaffey*, 2003 WY 137], ¶¶ 10-11, 78 P.3d [671,] 674 [(Wyo. 2003)]. The fact that the issue is constitutional does not necessarily make it fundamental. For example, in [*WR v. Natrona Cty. Dep't of Family Servs. (In Interest of DG)*], 916 P.2d [991,] 997-98 [(Wyo. 1996)], and *TR* [*v. Washakie Cty. Dep't of Pub. Assistance & Soc. Servs.*], 736 P.2d [712,] 719-20 [(Wyo. 1987)], we refused to address issues concerning the constitutionality of the parental rights termination statutes. In contrast, we considered in *Kordus v. Montes*, 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014), a claim that application of the statute of limitations to a minor's medical malpractice action violated the fundamental right to access to courts even though the issue was not raised at trial. In *Zupan v. Zupan*, 2010 WY 59, ¶ 34, n.4, 230 P.3d 329, 338, n.4 (Wyo. 2010) we ruled Mother's argument that the residency provision in the divorce decree violated her constitutional right to travel could be considered on appeal even though it was not raised at trial.

*Gjertsen v. Haar*, 2015 WY 56, ¶ 15, 347 P.3d 1117, 1123 (Wyo. 2015). "We have also on occasion said the plain error standard applies in cases where a constitutional issue was not raised below." *Id*. at ¶ 15, 347 P.3d at 1123 n.4 (citing *WR v. Natrona Cty. Dep't of Family Servs. (In Interest of DG)*, 916 P.2d 991, 998 (Wyo. 1996); *TR v. Washakie Cty. Dep't of Pub. Assistance & Soc. Servs.*, 736 P.2d 712, 720 (Wyo. 1987)).

[¶24] An appellant's assertion of a "fundamental right" does not necessarily persuade this Court to consider the issue for the first time on appeal. Rather, we will recognize an exception to the rule "for an issue that 'is of such a ***fundamental nature*** that it must be considered.'" *Kordus*, 2014 WY 146, ¶ 10, 337 P.3d at 1141 (emphasis added) (quoting *Utley v. Lankford* (*In re Guardianship of Lankford)*, 2013 WY 65, ¶ 28, 301 P.3d 1092, 1101 (Wyo. 2013)). We have "declined to address newly raised issues that present constitutional questions where nothing more is shown to compel the Court's review[,]" *Utley*, 2013 WY 65, ¶ 29, 301 P.3d at 1101, and we have held that:

> [A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process.

7

> "Due process" is not a talismanic term which guarantees review in this court of ***procedural errors correctable by the administrative tribunal***.

*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Wright (In re Wright)*, 983 P.2d 1227, 1232 (Wyo. 1999), *overruled in part on other grounds by Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 92, 95 P.3d 794 (Wyo. 2004) (emphasis in original). Other courts have declined to consider a new issue on appeal, even when it may be an issue of a fundamental nature, because the issue was "not properly developed for review[.]" *Greenwood v. FAA*, 28 F.3d 971, 978 (9th Cir. 1994). In *Greenwood*, the court held that it could not consider the appellant's argument that his equal protection rights were violated by the FAA's nonrenewal of his pilot examiner designation because there was no information in the record regarding his contention that the FAA's decision was motivated by his age. The court held that "[a] limited agency record may preclude review of substantive claims." *Id.*

[¶25] With this background, we turn to the issues which Ms. Crofts contends are of such a fundamental nature that we should consider them despite the fact that they are being raised for the first time on appeal.

## *Deprivation of procedural due process*

[¶26] Ms. Crofts does not challenge the procedure she was provided relating to her termination. She was given prior notice, an opportunity to respond, and a full name-clearing hearing. Rather, her allegations that she was deprived of procedural due process are directed to the two suspensions, to which no liberty interest attaches.

[¶27] In order to establish a procedural due process claim, Ms. Crofts must first demonstrate that she possessed a property or liberty interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). The Fourteenth Amendment does not create property or liberty interests. Rather, the right, if any, must arise out of an independent source, such as state law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To "assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (internal quotation marks and citation omitted). In employment cases, the protected interest asserted is generally the property interest in continued employment, and the liberty interest in the employee's "good name and reputation as it affects [her] property interest in continued employment." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).

[¶28] It is undisputed that Ms. Crofts had a property interest in her continued employment with Game & Fish. *Metz v. Laramie Cty. Sch. Dist. No. 1*, 2007 WY 166, ¶ 29, 173 P.3d 334, 342 (Wyo. 2007). She seems to concede that right may not rise to the level of an issue of such fundamental nature that it must be considered for the first time on appeal, citing *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 n.17 (10th Cir. 1998) (noting "it is unclear" whether an interest in continued employment is protected by substantive due process). However, Ms. Crofts contends that her liberty interest – the right to pursue a career of her own choosing – is a fundamental right.

[¶29] "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971).

> In *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), we explained that the dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in his community" would qualify as something "the government is doing to him," so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name.

*Owen v. City of Independence, Mo.*, 445 U.S. 622, 633 n.13, 100 S.Ct. 1398, 1406 n.13, 63 L.Ed.2d 673 (1980).

[¶30] In the employment context, liberty interests involve: "1) the protection of [the employee's] good name, reputation, honor, and integrity, and 2) [the employee's] freedom to take advantage of other employment opportunities." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). To support a claim for violation of her liberty interests without due process, Ms. Crofts must show that Game & Fish made statements that: (1) impugned her "good name, reputation, honor, or integrity;" (2) were false; (3) occurred in the course of her termination or will foreclose other employment opportunities; and (4) were published. *Workman*, 32 F.3d at 481; s*ee also Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976) (for a liberty interest to attach, "the defamation had to occur in the course of the termination of employment"). The Tenth Circuit has "clarified that the third element of this test is conjunctive, and that in order to satisfy it, the employee must show both that the defamatory statement occurred in the course of employment termination and that it will foreclose other employment opportunities." *Bjorklund v. Miller*, 467 Fed. Appx. 758, 767 (10th Cir. 2012).

[¶31] Ms. Crofts might contend that the findings of dishonesty associated with her two suspensions do give rise to a liberty interest because they foreclose her ability to take

9

advantage of other employment opportunities. *See, e.g., Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir. 1983). However, she cites no authority for the proposition that the suspensions alone are sufficient to support a liberty interest claim. Further, and equally troubling, the record is inadequate for this Court to find that either or both of Ms. Crofts' suspensions actually would limit her freedom to take advantage of other employment opportunities. "A sufficient administrative record is one that permits informed judicial evaluation of the issues raised. . . . A limited agency record may preclude review of substantive claims." *Greenwood*, 28 F.3d at 978 (citing *Southern Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 676 (9th Cir. 1989)).

[¶32] We hold that neither the property interest nor the liberty interest asserted by Ms. Crofts adequately supports a due process claim "of such a fundamental nature that it must be considered" for the first time on appeal.

## II. Did the OAH lack jurisdiction over Ms. Crofts' appeal?

[¶33] Ms. Crofts contends that the hearing examiner did not have jurisdiction to hear her personnel appeal because the head of Game & Fish did not properly delegate authority to her two supervisors to issue the suspensions, contrary to the state's personnel rules. Ms. Crofts asserts the rules only authorize an agency head to suspend or discharge a permanent employee, unless that authority is delegated in writing. State of Wyoming Personnel Rules, ch. 1 § 4(b)(i) (effective November 2, 2009), and ch. 11 § 3(b), (d) (effective December 7, 2001).[3] She claims that the two supervisors who signed her suspension letters lacked this requisite written authority. Therefore, she argues, the suspensions in her case were void because they were improperly issued, and her dismissal is also void because it was based, in part, on the two prior suspensions. She goes on to argue that, since the suspensions and termination were void, the OAH had no jurisdiction over the personnel appeal that she filed.

[¶34] Ms. Crofts claims that she raised the question of authority at the hearing when her attorney attempted to introduce facts concerning Mr. Ehlebracht's authority to issue the three-day suspension.

> Q. [Ms. Crofts' attorney]: On April 25, 2012, you received a notice of disciplinary suspension without pay for three days; is that correct?
>
> A. [Ms. Crofts]: That's correct.

---

[3] Game & Fish takes issue with this reading of the language of the rules. We will not address that issue because we decide the case on other grounds.

Q. And that was issued by Mr. Ehlebracht; is that correct?

A. Yes it was.

Q. I believe you've had some questions as to whether Mr. Ehlebracht had the authority to issue that disciplinary suspension?

A. Correct.

Q. What is your question? What are your concerns about that?

A. As I read the disciplinary policy, the only person that can issue suspensions without pay or dismissal is the agency head. However, the agency head may delegate his duties to another person in writing to perform those actions on his behalf, and that supervisors are, according to policy, only allowed to write written reprimands, whereas [Mr.] Ehlebracht had – as we found out later, did not have written permission to act on behalf of the agency head, nor was he – and it was not a written reprimand that he issued. It was actually a suspension without pay.

[Attorney for Game & Fish]: And I'm going to object and move to strike that entire response. Procedural issues have been ruled outside of this matter, including procedural issues that was [sic] specifically part of respondent's motion in limine, and that – that OAH has already ruled on.

[Ms Crofts' attorney]: I don't believe that's been ruled on, and the question is whether or not Mr. Ehlebracht had the authority to do so.

[¶35]  In order to preserve an issue for appeal, it must be called to the attention of the trial court in a "clear or meaningful manner." *Kisling*, 2013 WY 91, ¶ 16, 305 P.3d at 1163.

Father's position is that an issue may be raised by implication from the pleadings, or that the mere mentioning of an issue is sufficient to preserve it for appeal. This notion runs contrary to both the purpose of the rule and our established

11

jurisprudence. We have held that we will not consider issues that were not raised below in any meaningful manner. . . . It is a basic premise of appellate practice that to preserve an issue for appeal, that issue must be called to the attention of the trial court in a clear manner.

*Yates v. Yates*, 2003 WY 161, ¶ 15, 81 P.3d 184, 189 (Wyo. 2003) (internal citations and quotation marks omitted).

[¶36]  Ms. Crofts' cited testimony was insufficient to call the issue to the attention of the OAH in a clear and meaningful manner.  Game & Fish's attorney objected to the introduction of this evidence and the OAH had already ruled that procedural evidence would not be admitted.  Ms. Crofts dropped the line of questioning and failed to make an offer of proof on the subject.  *See Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2015) ("[A]n offer of proof should have been made so that we would know what would have been presented[.]").

[¶37]  Ms. Crofts did raise the issue in her appeal to the district court.  There, however, she only contended that the suspensions were procedurally deficient because they were improperly issued.  She did not argue that the deficiency deprived the OAH of jurisdiction.  The district court correctly refused to consider the question, as she had not raised it below.  This appeal is the first time Ms. Crofts has set forth the argument that the alleged procedural deficiencies raise a jurisdictional question.

[¶38]  The question of jurisdiction is one that cannot be waived and may be raised for the first time on appeal.  *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo. 2005).

> "'Jurisdiction' refers to 'a court's adjudicatory authority.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160, 130 S.Ct. 1237, 1243, 176 L.Ed.2d 18 (2010) (citation omitted).  There are two types of jurisdiction—personal jurisdiction and subject matter jurisdiction.  *Id.* at 160–61, 130 S.Ct. at 1243. Personal jurisdiction refers to the power of a court to make an adjudication applicable to a person, while subject matter jurisdiction refers to the power of a court to hear and determine certain classes of cases.  *Id.*

*Circuit Court of the Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 33, 332 P.3d 523, 533 (Wyo. 2014); s*ee also Birkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 9, ¶¶ 5-6, 11, 150 P.3d 187, 189-90 (Wyo. 2007) (principles of jurisdiction apply to administrative agencies).   Ms. Crofts argues that the OAH lacked subject matter jurisdiction to decide her personnel appeal.

[¶39] Ms. Crofts relies upon *State ex rel. Minor v. Eschen*, 656 N.E.2d 940 (Ohio 1995), for the assertion that because the suspensions were void, the OAH lacked jurisdiction to consider an appeal of the suspensions. In that case, the mayor discharged a civil service employee because he had been found shoplifting. The mayor was not an "appointing authority" who was authorized to terminate his employment under the terms of the city charter. *Id.* at 943. The employee sought a writ of mandamus instead of appealing to the civil service commission, contending that he could not appeal because the civil service commission lacked jurisdiction. The Ohio court agreed. *Id*. at 943-44.

[¶40] Wyoming statutes, however, grant the presiding officer in administrative hearings the authority "[t]o determine if the agency complied with relevant procedural requirements of the personnel rules[.]" Wyo. Stat. Ann. § 9-2-1019(a)(ii) (LexisNexis 2015). The state personnel rules also provided that the presiding officer may "determine if the agency complied with relevant procedural requirements of the personnel rules[.]" State of Wyoming Personnel Rules, ch. 12, § 7(g)(iii) (effective December 7, 2001). The OAH, therefore, had subject matter jurisdiction over the question of whether Game & Fish followed the personnel rules, including whether the disciplinary actions were properly issued.

[¶41] As one court has stated:

> If an employee believes that his termination was not authorized by the proper appointing authority, that problem could be easily remedied in the grievance process. If the termination had been authorized by the appointing authority, that could be documented and made clear to the employee. If the termination were truly unauthorized, as [the employee] alleges here, it could be reversed.

*Tom Beu Xiong v. Fischer*, No. 13-CV-418-JDP, 2014 WL 2765802 at *10 (W.D. Wis. June 18, 2014).

[¶42] The same is true in this case. The OAH had the power to hear and determine the question of whether Mr. Ehlebracht or Mr. Choma were authorized to suspend Ms. Crofts. It did not do so because Ms. Crofts did not raise that issue, and we will not consider it now for the first time on appeal.

## CONCLUSION

[¶43] Ms. Crofts has not asserted a due process claim of such a fundamental nature that we will consider it for the first time on appeal. She failed to preserve her claim that her suspensions were issued without authority. That claim is not jurisdictional, and we therefore also decline to consider it for the first time on appeal. The decision of the district court affirming the decision of the OAH is affirmed.

13