STATE OF MISSOURI at the Relation of ADA M. SOMMER, NELLIE G. HOFFMAN, LUELLA B. SAYMAN and RUTH C. HIMMLER, Relators, v. PAUL C. CALCATERRA, LEO J. HENNESSEY, SIGMUND M. BASS and CLIFFORD G. HALEY, Constituting the Board of Election Commissioners of the City of St. Louis, Missouri, Respondents.

STATE OF MISSOURI at the Relation of ROBERT M. SCOTT and VALLA D. ABBINGTON, Relators, v. PAUL C. CALCATERRA, LEO J. HENNESSEY, SIGMUND M. BASS and CLIFFORD G. HALEY, Constituting the Board of Election Commissioners of the City of St. Louis, Missouri, Respondents, Nos. 43095 and 43096—247 S. W. (2d) 728.

Court en Banc, March 26, 1952.

*Luther Ely Smith, Jr.,* and *Victor B. Harris* for relators in Case No. 43095; *Smith, Harris & Hanke* of counsel.

*S. R. Redmond* and *Henry D. Espy* for relators in Case No. 43096.

*Hyman G. Stein* and *Mortimer A. Rosecan* for respondents in cases Nos. 43095 and 43096.

1146

**LEEDY, J.**—These cases were consolidated for the purpose of argument. They involve precisely the same issues, and so will be disposed of in a single opinion. They are original proceedings in prohibition to prevent the Board of Election Commissioners of the City of St. Louis from receiving declarations of candidates for the office of State Senator, and otherwise conducting the ensuing primary and general elections for such office in the senatorial districts into which the Board recently divided the city under an apportionment based on the 1950 decennial census. Relators sue as "citizens of the United States and of the State of Missouri, and residents, taxpayers and qualified voters of the City of St. Louis"—and, in No. 43,096, also on behalf of all other citizens, electors and voters similarly situated. Respondents are members of, and constitute the Board of Election Commissioners.

In the reapportionment of the state's thirty-four senators and the numbers of their districts following the last (1950) decennial census, as provided by Art. III, § 7, Const. of Mo., 1945, the City of St. Louis was found to be entitled to seven senators, and the district numbers assigned to it were 1 to 7, both inclusive. RSMo 1949, § 22.010, VAMS. Under § 8 of the same article of the Constitution, the duty then devolved upon the Board of Election Commissioners of the City of St. Louis (it being the body authorized to establish election precincts, RSMo 1949, § 118.150, VAMS) to divide the city "into districts of contiguous territory, as compact and nearly equal in population as may be, * * * ." Whether in discharging the duty thus enjoined upon them, respondents established districts conforming to these constitutional requirements of contiguity, compactness and equality of population is the ultimate question presented on the merits. But before reaching that question it becomes necessary to inquire into and pass upon another raised in the return and briefed by the parties, namely, whether prohibition lies against respondents under the facts above outlined.

Much has been written concerning the scope and application of the writ of prohibition as developed from the common law and applied in this jurisdiction, but no aspect of the governing principles is better

settled than that the office of the writ is to prevent or control judicial or quasi-judicial action. Our cases say "that it is the nature of the act, and not the character of the board or tribunal proceeded against which determines the propriety of the writ." State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 898, 8 S.W. 2d 897, 899; State ex rel. U.S. F. & G. Co. v. Harty, 276 Mo. 583, 208 S.W. 835. Accordingly, it has become familiar doctrine that "election authorities are subject to the writ of prohibition with respect to acts which are judicial or quasi-judicial, but not, in the absence of statutory provision, with respect to acts which are legislative, administrative, or ministerial in their nature." 18 Am. Jur., Elections, § 329, p. 389. See, also, Anno. 115 A.L.R. 3, 24; Anno. 159 A.L.R. 627, ▆▆▆ 634. 73 C.J.S., Prohibition, § 11, p. 64, states the rule thus: "An administrative or executive board or tribunal or a public officer will be restrained by prohibition from performing judicial or quasi-judicial acts only if acting without, or in excess of, jurisdiction."

"It is a well-settled rule that prohibition will not lie to control administrative or ministerial functions, discretionary actions, or legislative powers. High on Ex. Legal Rem. (3d Ed.) § 782; State ex rel. v. Clark County Court, 41 Mo. 44; State ex rel. v. Bright, 224 Mo. 514, 123 S.W. 1057; State ex rel. v Goodier, 195 Mo. 551, 93 S.W. 928;. Kalbfell v. Wood, 193 Mo. 675, 92 S.W. 230." State ex rel. Bash v. Truman, 335 Mo. 1077, 1080, 75 S.W. 2d 840, 843.

▆▆▆ It may be said at this point that there is no Missouri statute extending the scope of the writ to acts of a legislative, administrative or ministerial nature, so the solution of the preliminary question (as to the propriety of the remedy here invoked) turns upon whether the act sought to be prohibited is either judicial or quasi-judicial in nature, a matter upon which the two sets of relators take different positions. As regards the nature of the action in question, it is not contended that any distinction is to be drawn between the laying out or establishing the districts in the first instance, and respondents' duties or jurisdiction having to do with the process of administering or giving effect to such districts in connection with elections to be held therein. Nor is it sought to come within the rule that although ordinarily prohibition is preventive rather than corrective, and issues to restrain the commission of a future act and not to undo an act already performed, yet prohibition is available where a judicial body is proceeding without jurisdiction, and some part of its action remains to be performed. Example: Granting of an injunction without jurisdiction; enforcement may be prohibited. State ex rel. Taylor v. Nangle, 360 Mo. 122, 227 S.W. 2d 655, 657.

It will be helpful to notice the cases on which relators rely on the question of the remedy, and this we do seriatim. In State ex rel. Stone v. Thomas, 349 Mo. 22, 159 S.W. 2d 600, it was held that the

action of the board of election commissioners in changing certain precinct lines did not operate to abolish the former precincts and terminate the tenure of the judges and clerks in those precincts, and that construing the applicable statutes as having such effect "was a judicial act which can be prevented by prohibition because in excess of the board's jurisdiction."

State ex rel. Bates v. Remmers, 325 Mo. 1175, 30 S.W. 2d 609, (heavily relied on here) cites authority to the effect that the writ of prohibition "is frequently used to prevent boards, commissions and other public bodies *exercising quasi-judicial powers*, from the doing of unauthorized acts or acts in excess of the authority vested in them." (Italics, the present writer's.) The court held, without any discussion of the nature of the act, that the printing of the name of a candidate on the ballot which was not entitled to be printed thereon (because his declaration was not filed in conformity with the statute) was in excess of the board's authority. It will thus be seen that the act prohibited was one which involved the construction of the statutes by the board, which is the very thing the Stone case pointedly holds to be judicial in nature.

Mansur v. Morris, 355 Mo. 424, 196 S.W. 2d 287, was an original proceeding in prohibition in this court to prohibit the enforcement of the Boone County Circuit Court's judgment awarding a rule absolute in prohibition which required that the county clerk keep the name of relator (in the Supreme Court case) off the ballot. Our writ was also directed to the county clerk. The object of such proceeding was to prevent removal from the ballot of the name mentioned. None of the duties of the county clerk there under scrutiny were held to be purely ministerial. Indeed, the crux of this court's holding was that the county clerk "cannot usurp judicial functions. Yet in this case he has, in effect, assumed to decide that relator Mansur is eligible for the office," to prevent which prohibition would lie, and ▮▮▮ hence the respondent circuit judge did not exceed his jurisdiction in entertaining prohibition.

In State ex rel. Anheuser-Busch v. Eby, 170 Mo. 497, 71 S.W. 52, judicial functions were involved. There the circuit court was prohibited from trying 1203 separate criminal cases against relator then pending before it. This for the reason that the state was estopped to prosecute for the violations charged, the General Assembly having passed an amnesty statute with which relator had complied, and also because the remedy by appeal was not adequate.

This leaves only State ex rel. Davis v. Ramacciotti, (Mo.) 193 S.W. 2d 617, which will later be treated separately.

Adverting to the matter of relators' divergent views concerning the nature of respondent's action, as mentioned above, that of relators in No. 43,095 is thus stated in their brief: "We do not dispute that in carrying out the constitutional directive as to the apportionment,

respondents may be, and are, acting in a legislative capacity.'' The only references to that topic by the relators in No. 43,096 are these: ''Respondents are an administrative and not a legislative body. * * * But the acts of respondents are administrative and not legislative.'' These contentions run directly counter to principles by which the office of the writ is controlled, as cited above, and if either view is correct, further discussion would seem pointless. Traditionally, such a function as that here involved has always been regarded as legislative. State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S.W. 40. Indeed, the authority for the board to divide the territory of the City of St. Louis is found in the legislative article of the Constitution, which is Article III. It is too clear for argument that in so acting respondents were performing a legislative function, and we so hold.

The remaining matter for determination is the effect, if any, of State ex rel. Davis v. Ramacciotti, supra, as a controlling authority on the question of the propriety of the writ. In other words, does that case hold prohibition will lie? The relators do not contend it does so except by implication, which, it must be agreed, is as strongly as the matter may be put. There a preliminary rule in prohibition was applied for. For reasons not appearing, the court departed from its uniform custom and practice of passing on such applications without an opinion, and denied this one in a per curiam. It will be seen that the grounds on which the denial was based were discretionary, but the per curiam does not purport to discuss the propriety of the writ as a remedy, and hence cannot be regarded as authoritative, or even persuasive on that question. See, State ex rel. Wulfing v. Mooney, No. 43,107, and State ex rel. Dunne v. Mooney, No. 43,108, concurrently decided herewith.

It conclusively appears that our writ was improvidently issued, and must be quashed. It is so ordered. All concur.