STATE ex rel. Linda HOLLAND and Michael C. Cierpiot, Relators,

v.

The Honorable John I. MORAN, Respondent.

No. WD 48461.

Missouri Court of Appeals, Western District.

Oct. 28, 1993.

Michael S. Ketchmark, Thomas A. Sheehan, Kansas City, for relators.

Buford L. Farrington, James M. Ziegler, Humphrey, Farrington & McClain, Independence, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This is an action for a writ of prohibition under Rule 97.01 arising out of a lawsuit before Judge Moran to declare the law and enforce an injunction regarding which of two people should be the Republican candidate in a special election to fill a vacancy in a redistricted senatorial district located in Lee's Summit and Southeastern Jackson County. This controversy involves a nomination contest, as opposed to an election contest, specifically covered by state law in §§ 115.526–.601, RSMo 1986, involving questions regarding less defined statutory procedures relating to a political party's selection of a candidate for a special election to fill a vacancy created when a state senator resigns from office after redistricting occurs. See e.g. §§ 115.363–.375. (All statutory references are to the Revised Statutes of Missouri of 1986 unless otherwise indicated.)

To their credit, the attorneys have presented a concise stipulation of the facts which, for the benefit of the reader, will be arranged chronologically.

On July 30, 1993, Senator Robert Johnson sent a letter to the governor resigning as State Senator from the Eighth District. He had last been elected in the general election of 1990 for a four year term. Linda Holland (Holland), chairman of the Republican Eighth District Nominating Committee, became aware of the vacancy. She sent notices to the members of the "old" nominating committee (1990 district lines), as well as to the "new" or redistricted Eighth District members (post–1991 district lines), for separate meetings of each committee to be held on August 5th. In 1991, pursuant to Article III of the Missouri Constitution the district lines were redrawn as part of the decennial effort to equalize population within the districts. The boundaries for this senate district had been slightly altered by the redistricting but the differences in the makeup of the new and old committees were considered important.

August 5—Both the "old" and "new" committees met and nominated Derek Holland, the chairman's husband, to be the Republican candidate. A Rules and Credentials Committee was established for each committee meeting.

September 2—A writ of election calling for a special election on November 2, 1993 was issued by the governor calling for a special election to fill the vacancy.

September 3—The secretary of state sent out a notice of the Eighth District vacancy. Holland executed a "certificate of nomination" naming Derek as the Republican candidate and mailed it to the secretary of state.

September 9—Holland sent a notice to all committee members informing them Derek was the nominee. Don Redding, a committee member, contacted Holland and Michael

Cierpiot (Cierpiot), the vice-chairman, and asked if they were going to call another meeting of the "old" committee. It was controverted whether Holland denied the request for a meeting of the "old" committee even though statutes permit a committee member under certain circumstances, to convene a meeting to nominate a candidate.

September 10—Redding sent out a notice of another meeting of the Eighth District Committee, based on the "old" district lines.

September 12—Redding presided at a meeting of the "old" committee and Robert "Bud" Hertzog was nominated as the party's candidate. A certificate of nomination was sent to the secretary of state who refused to accept the Hertzog nomination on the basis the party had already filed a certificate of nomination naming its candidate.

September 14—Pursuant to notice already given, Holland convened a meeting of both the "new" and "old" committees and both again nominated Derek.

— — — — — — — — — —

On these facts, Redding and Hertzog filed suit against Holland and Cierpiot for a declaratory judgment and injunction for the purpose of voiding the actions which led to Derek's nomination. The defendants filed a motion to dismiss including the grounds of lack of jurisdiction for the courts to hear such matters. On September 29th, the trial judge indicated rulings, discussed infra, which would have granted relief to the plaintiffs Redding and Hertzog. Holland and Cierpiot filed this writ. This court issued a preliminary order, and because of the proximity of the November 2nd election, expedited the briefing schedule and heard oral arguments on October 13th at which time counsel was advised a decision would be announced the next day. On October 14, the court made the writ absolute with the announcement that this opinion of the court would follow.

The disposition of this writ is made against the backdrop of the trial court's legal conclusions: I) the August 5th meeting was premature because it preceded issuance of a writ of election; II) members of the Eighth Senate District Republican nominating committee for this newly redistricted area should be comprised of those committee members in the "old" 1990 district (prior to the 1991 redistricting); III) decisions of a party nominating committee on rules and credentials are subject to judicial review; IV) a member of such a nominating committee may call a meeting when the chairman or vice-chairman refuse or fail to call a meeting to fill a vacancy; and V) only committee members, "elected at polling places, are eligible to be on this district committee." The trial court conclusions will be examined on the basis of the arguments made by relators Holland and Cierpiot in this writ before the court: 1) the courts have no jurisdiction over the subject matter of a political party nominating committee; and 2) if there is jurisdiction, the trial court's rulings that a) the August 5th meeting was void as premature, and b) the "old" district nominating committee should pick the nominee as opposed to the "new" committee, were incorrect and would cause irreparable harm due to the proximity of the election.

Certain facts and applicable laws must be kept in mind:

1) Although much of the controversy centers on credentials and eligibility of committee members who voted at the meetings, the central issue revolves around conclusion II— do the new or old districts apply.

2) Derek Holland's name is still listed by the secretary of state for the November 2 special election.

3) Under Art. III, Sec. 10, Mo. Const., senatorial districts are "redistricted" based on the last decennial census. The Eighth District elected Johnson in November, 1990 for a four year term. Redistricting occurred in 1991, and the district's lines differ from the "old" 1990 version.

4) State statutes set up a scheme for nomination in lieu of the traditional primary election, when a vacancy is created in a senatorial district which has been redistricted. Sec-

tion 115.363 allows a party's nominating committee to select candidates for an election to fill an unexpired term. Section 115.365.1.(3) describes a senatorial district committee of each party to select a candidate. In § 115.-365.2 the legislature has said, "After any decennial redistricting, the nominating committee shall be composed from the new districts, and the new district lines shall be used in the selection of the candidate." Section 115.367 contains language when the boundaries of a district have been altered, "the members of the nominating committees for that office," are to be those "who reside within the new or altered district." Section 115.369 provides upon notice of a vacancy, the secretary of state is to within twenty-four hours give notification to the appropriate party chairman of the vacancy. Furthermore, § 115.369 states the chairman "... shall, as soon as possible, but in no case later than two weeks ... call a meeting ... for the purpose of selecting a candidate ..." and, if the chairman does not call a meeting in the specified time, ... "any member of the nominating committee may do so." Section 115.371 states a majority of the committee must be present in order to nominate a candidate.

### I. *Jurisdiction and Prohibition*

### Jurisdiction

■ The first issue which must be addressed is whether the circuit court has jurisdiction over any portion of the underlying suit. Relators' argue that respondent Judge Moran .exceeded his jurisdiction because the "circuit court lacks subject matter jurisdiction in this case in that plaintiffs have no statutory right to obtain judicial review of actions taken by the nominating committee in selecting a nominee for the upcoming special election." It appears that Relators' argument is based on the fact § 115.529 gives circuit courts jurisdiction to "hear and determine primary election contests." Therefore, Relators conclude the courts only have subject matter jurisdiction in primary and general election contests.

Article 5, section 14(a) of the Missouri Constitution provides that the "circuit courts shall have original jurisdiction over all cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court." The Constitution gives the circuit court broad jurisdiction to decide cases. However, statutes limit circuit courts' jurisdiction. It is true, as Relators argue, that election contests are statutory actions. *State ex rel. Bonzon v. Weinstein*, 514 S.W.2d 357, 362 (Mo.App.1974). Therefore, the jurisdiction of the circuit court for election contests is defined by the election statutes and "the letter of the law is the limit of [its] power." *State ex rel. Phillips v. Barton*, 300 Mo. 76, 254 S.W. 85, 89 (banc 1923). Again, it is noted this is not an election contest. The issues involved in this case are the effects of Comprehensive Election Act statutes on a political party's nomination process to file a candidate in a special election. The .circuit court has jurisdiction to determine some but not all of the issues presented in this case.

The Constitution vests this judicial power in the courts. Mo. Const. art. V, § 1 (1945 amended 1976). "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Courts alone have the power to make final determinations of questions of law. *Howlett v. State Social Sec. Comm'n*, 347 Mo. 784, 149 S.W.2d 806, 810 (banc 1941). Therefore, the Missouri Constitution, requires courts to review questions of law. If this court adopts Relators' view, much of the legislature's command that "§§ 115.001 to 115.641 shall apply to public elections in the state" is rendered null and void. Section 115.005. Additionally, there would be no authority to enforce the law.

Finally, if this court were to agree that there was no jurisdiction for anything but a primary election contest, it would be unable to try the "class one election offenses" because the legislature did not specifically give the court jurisdiction under § 115.529. Thus, general but limited jurisdiction exists over the nomination process. See III of this opinion.

### Writ of Prohibition

■ The issue raised by the writ of prohibition is whether the circuit court acted in excess of its jurisdiction. If the trial court had no jurisdiction over the subject matter of this action or if the court acted in excess of the jurisdiction with which it was vested, the writ will lie. *State ex rel. Bonzon v. Weinstein,* 514 at 362; *State ex rel. Vogel v. Campbell,* 505 S.W.2d 54, 58 (Mo. banc 1974).

"[F]rom time to time in peculiarly limited situations there are instances in which absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order. In such circumstances, the extemporaneous character of prohibition may be the remedy to be applied." *State ex rel. Richardson v. Randall,* 660 S.W.2d 699, 701 (Mo. banc 1983). The present circumstances are one of the unusual and exceptional situations where prohibition does lie. In this case, the special election is to be held on November 2, 1993. "On account of the shortness of time and for other reasons, we do not believe any other remedy would afford adequate relief." *State ex rel. Stone v. Thomas,* 349 Mo. 22, 159 S.W.2d 600, 602 (banc 1942). Due to time constraints, the threatened injury cannot be adequately remedied by appeal. *State ex rel. Hayter v. Griffin,* 785 S.W.2d 590, 592 (Mo. App.1990). Therefore, in this case, prohibition is the proper remedy.

### II. New v. Old District Lines

■ Having just determined the courts have general jurisdiction to answer some questions over the party nominating process, §§ 115.363–375 the court now addresses the issue which is the crux of the underlying suit: Is the nominating committee comprised of committee members from the "new" or "old" senatorial district lines?

The court first holds the respondent had jurisdiction to make this decision. This is a decision which is judicial in nature, and should be made by the courts. *State ex rel. Wulfing v. Mooney,* 362 Mo. 1128, 247 S.W.2d 722, 724 (banc 1952).; *State ex rel. Sommer v. Calcaterra,* 362 Mo. 1143, 247 S.W.2d 728, 729 (banc 1952); *See also State ex rel. Stone v. Thomas,* 349 Mo. 22, 159 S.W.2d 600, 602 (banc 1942). Further evidence of this issue of boundary lines being subject to judicial scrutiny is the Court's issuance of a writ in *State ex rel. Mathewson v. Board of Election Comr's,* 841 S.W.2d 633 (Mo. banc 1992).

The issue in *Mathewson,* was the "new" v. "old" district lines in the context of actual boundary lines within which to hold the special election for Senator Dirck's successor. While *Mathewson,* is authority for courts' interpreting the legislative descriptions and directions as to boundaries in special elections, it is based on a dispute as between electors and the appropriate election authorities on where the election is to be held and who can go to a polling place and vote. In the case at bar, the issue is who makes up the nominating committee of each party to select its standard bearer.

Section 115.365.2 provides "[a]fter any decennial redistricting, the nominating committee shall be composed from the new districts, and the new district lines shall be used in the selection of a candidate." When a statute is construed, the words used in the statute are given their plain and ordinary meanings. *Moyer v. Walker,* 771 S.W.2d 363, 368 (Mo. App.1989). Furthermore, where a statute's language is clear and unambiguous, there is no room for construction. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). Here, the plain language of the statute requires that the Nominating Committee be composed on the basis of the "new" district lines. The statute is clear and unambiguous.

Contrary to the respondent's ruling, the court rules the new lines apply to the nominating committee. Therefore, the writ is made absolute as to part II of the respondent's conclusions, so no ruling can be made on this issue other than the "new" lines are applicable.

### III. Rules and Credentials and Committee Members Eligibility

■ While this court declares there is jurisdiction to decide some of the issues be-

fore it, there is not jurisdiction for all the issues raised at bar. There is not jurisdiction to determine issues which are for the most part purely party matters. This court will leave matters regarding internal operation of the party for determination by the proper tribunals of the *party itself*. *Carney v. Pilch*, 30 Conn.Supp. 34, 296 A.2d 687, 688 (1972) (emphasis added) (the court held there was not jurisdiction where the parties sought to enjoin selection of party-endorsed candidates for office of town committee members where a statute established such disputes were to be resolved by the state central committee). "In factional controversies within a political party, where there is not controlling statute or clear legal right involved, the court will not assume jurisdiction but will leave the determination ... to the party itself." *Id.* Among those issues which this court will not assume jurisdiction are whether a quorum was present and matters including who the individual candidate is, i.e., those areas which are part of the internal operation of the party. *See Irish v. Democratic–Farmer–Labor Party*, 399 F.2d 119 (8th Cir. 1968) (the court declined to get involved in matters regarding party nomination to the National Democratic Convention to select a presidential candidate).

■ This court joins in following the long standing tradition of acting with judicial restraint in entering the "political thicket". *Lee v. Nielsen*, 120 R.I. 579, 388 A.2d 1176, 1179 (1978) ((citing *Colegrove v. Green* 328 U.S. 549, 556, 66 S.Ct. 1198, 1201, 90 L.Ed. 1432 (1946) appeal after remand 426 A.2d 257 (R.I.1981)). A common explanation for this is the belief that "a large public interest is served in allowing the political process to function free from judicial supervision." *Id.* (citing *O'Brien v. Brown*, 409 U.S. 1, 5, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1 (1972)). The political parties are voluntary associations which establish their own rules, *Carney*, 296 A.2d at 688, and which have "certain 'inherent powers of self-government' and are vested with wide discretion to interpret and decide their own regulations, rules and disputes." *Lee*, 388 A.2d at 1179; *Brown v.*

*O'Brien*, 469 F.2d 563, 569 (D.C.Cir.1972) *stayed* 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1, *vacated as moot* 409 U.S. 816, 93 S.Ct. 67, 34 L.Ed.2d 73 (1972). The court is reluctant to decide between rival factions of political organizations. *Carney*, 296 A.2d at 688. The courts would rather allow the organization to attempt to reorganize itself and work out its own internal problems. *See Irish* 399 F.2d at 120. The best forum for political party disputes is the party itself and the courts are the last resort in such matters, and any encroachment should be done with caution, if at all. Virginia E. Sloan, *Judicial Intervention in Political Party Disputes: The Political Thicket Reconsidered*, 22 UCLA 622, 624 (1975).

In a similar case where the controversy was the selection of an Illinois delegate to attend the Democratic National convention, it was noted the litigation "achieved nothing more than a transfer of their dispute from one political arena to another" and "the party convention may actually be a better place for resolution of ..." the dispute. *Id.* (*citing Wigoda v. Cousins*, 14 Ill.App.3d 460, 302 N.E.2d 614 (1st Dist.1973)). While this case is somewhat different from those cases nominating a delegate to the party's national convention they are similar in what is at odds is the nomination process itself rather than the actual election. *See* Sloan, *Judicial Intervention in Political Party Disputes: The Political Thicket Reconsidered*, 22 UCLA 622.

■ The court will intervene "only where the challenged action of a political party infringes on a specific *constitutional* or *statutory right*." *Lee*, 388 A.2d at 1179 (emphasis added). Elections are statutory creations, and as such the courts must act within statutory confines. *See State ex rel. Bonzon*, 514 S.W.2d at 362. If the courts are to get involved in intra-party issues it should only be done via statute. Since the issues of credentials, rules, and eligibility of party committee members do not involve statutory rights (no individual has the right to be the party's nominee) and involves matters of in-

ternal party management, the court determines these matters and any disputes arising therefrom are for the political parties and not the courts.

## IV: *The Timing of the Meeting*

The two remaining matters in the trial courts supplementary conclusions of law are rendered moot by this decision. However, the court feels compelled to address part I which dealt with when the Chairman of the Eighth District Committee had "the authority to call a meeting under the election laws for the purpose of selecting a candidate." The judge indicated the timing for the call was not activated "upon receiving knowledge that a vacancy has occurred" but, rather, the chairman was "required to wait until the Writ of Election had been issued by the Governor...." As will be recalled, Chairman Holland learned of the vacancy on July 30th, and called a meeting for August 5th.

The resignation of Senator Johnson occurred while the body was in recess, so his letter went to the Governor. Section 21.090, RSMo 1986. The term "vacancy" applies to the issue at bar, and is not clearly defined but is repeatedly used in the statutes. The earliest time the chairman can call a meeting following resignation from an incumbent from an altered district, is never clearly established. The directions given are that a party nominating committee can select a candidate "when a vacancy ... occurs." Section 115.363.3. Additionally, under Art. III, § 14, the governor is to issue a writ of election "to fill vacancies." Section 21.110, RSMo 1986. Under § 115.369 the secretary of state is to notify the proper chairman within twenty-four hours after receiving notice of a vacancy. The statute then goes on to say: "The chairman of the nominating committee shall, as soon as possible, but in no case later than two weeks after being notified of the vacancy, call a meeting ..."

On the basis of the law just cited, this court will not state the legislature meant to void any committee nomination coming out of a meeting convened prior to the governor's writ (September 2) or the secretary of state's notification (September 3). This observation, though dicta, is not meant to condone nor to encourage such a hasty action in selecting a nominee. The meeting Holland convened on September 14, with the "new" committee nominating Derek Holland, will stand even if the August 5th meeting jumped the gun. Since it is determined the new district lines were meant by the legislature to control in this type of situation, and the September 14th meeting was not premature, the writ prohibiting the trial court from ruling in part II. of its conclusions the "old" district boundaries apply. The preliminary writ as to parts III. (judicial review of credentials) and V. (election of committee members) is also made absolute for lack of jurisdiction of the courts to determine these issues. Parts I. (premature call on meeting of nominating committee) and IV. (calling of a meeting by a committee member) are moot by the other actions taken here and, therefore, further trial court action is prohibited.

Additionally, the Respondent's motion in this court to allow the addition in the trial court of an additional party nominee, Derek Holland, is denied. The court also grants the motion of the relators to strike certain exhibits attached to the respondent's answer to the petition for writ.

All Concur.