# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 46

**APRIL TERM, A.D. 2023**

**May 18, 2023**

| | |
|---|---|
| JON CONRAD; JOSEPH RONALD "RON" MICHELI; CLARENCE VRANISH; CLARA JEAN VRANISH; and TROY NOLAN,<br><br>Appellants<br>(Plaintiffs),<br><br>v.<br><br>THE UINTA COUNTY REPUBLICAN PARTY, a Wyoming major political party; LYLE L. WILLIAMS; ELISABETH "BIFFY" JACKSON; KARL ALLRED; and JANA LEE WILLIAMS,<br><br>Appellees<br>(Defendants). | S-22-0210 |

*Appeal from the District Court of Uinta County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellants:*
Henry F. Bailey, Jr., Dale W. Cottam, and Brandon B. Taylor of Bailey, Stock, Harmon, Cottam, Lopez, LLP, Afton, Wyoming. Argument by Mr. Taylor.

*Representing Appellees:*
Caleb C. Wilkins of Evans Walker, Cheyenne, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]    This case involves a dispute within the Uinta County Republican Party over who could vote in its 2021 officer and state committeeperson election. The district court ruled a bylaw adopted by the Uinta County Republican Party governed who could vote in the election and the bylaw did not violate the relevant provision of the Wyoming Election Code, Wyo. Stat. Ann. § 22-4-105 (LexisNexis 2021). The court also indicated the Party's constitutional right to freedom of political association would be unduly burdened if it was prohibited from adopting and utilizing such a bylaw. We reverse because the voting procedure used in the election and the Party's bylaw violated the clear and unambiguous language of § 22-4-105. We do not consider whether § 22-4-105 violates the Party's constitutional right to freedom of association because the issue was not properly presented and the Wyoming Attorney General was not notified of, or allowed to participate in, the litigation.

## ISSUES

[¶2]    The issues for our review are:

1.    Should this Court abstain from reviewing the procedure used in the Uinta County Republican Party Central Committee's 2021 officer and state committeeperson election because it is a non-justiciable internal political party matter?

2.    Did the voting procedure used in the Uinta County Republican Party Central Committee's 2021 officer and state committeeperson election violate § 22-4-105?

3.    Was the issue of whether § 22-4-105 violates the Uinta County Republican Party's members' constitutional right to freedom of political association properly raised and litigated?

## FACTS

[¶3]    In the 2020 primary election, Appellants/Plaintiffs Jon Conrad, Clarence Vranish, Clara Jean Vranish, and Troy Nolan were elected by Uinta County Republican voters to be party precinct committeemen and committeewomen. *See* Wyo. Stat. Ann. § 22-4-101(b) (LexisNexis 2021) (major political parties, including the Republican Party, elect precinct committeemen and committeewomen at biennial primary elections); § 22-2-104(a)-(b) (LexisNexis 2021) (primary elections are held in August of general election years; general elections are held in November of "even-numbered year[s]"). As precinct committeepersons, they were members of the Uinta County Republican Party Central Committee (hereinafter "Central Committee"). Wyo. Stat. Ann. § 22-4-101(b) ("The

1

county central committee of each political party consists of precinct committeemen and committeewomen elected in the county at the regular biennial primary election."). Appellant/Plaintiff Joseph Ronald "Ron" Micheli was a registered Republican who voted in the 2020 Uinta County primary election. We will refer to these individuals collectively as the "Conrad Group." Appellees/Defendants Lyle L. Williams, Elisabeth "Biffy" Jackson, Karl Allred, and Jana Lee Williams (hereinafter referred to collectively as the "Williams Group") were sitting Central Committee officers in 2020. However, they were unsuccessful in their bids for election as Uinta County Republican precinct committeepersons in the 2020 primary.

[¶4]   On March 16, 2021, the Central Committee met to elect its officers and state committeepersons pursuant to § 22-4-105 (hereinafter referred to as the "2021 election"). That statute states:

> The county central committee shall meet at the county seat each odd-numbered year at a time and place determined by the county chairman. . . .  At the meeting, the county central committee shall elect the chairman of the county central committee, one (1) state committeeman and one (1) state committeewoman and other offices as provided by the party bylaws. A state political party may provide in its rules for the election of additional state committeemen and additional state committeewomen. Neither the chairman, state committeeman [n]or state committeewoman need be members of the county central committee.

Section 22-4-105. Under Wyo. Stat. Ann. § 22-4-110 (LexisNexis 2021), the state central committeepersons and the county chairmen "elected at the odd-numbered year meeting[s] of the county central committees" are members of the "state central committee." The state central committee serves a role in filling mid-term vacancies for Wyoming's member of the United States House of Representatives, Wyoming's United States Senators, and some state offices. Wyo. Stat. Ann. § 22-18-106 (LexisNexis 2021) (United States congressman vacancies) and § 22-18-111 (LexisNexis 2021) (United States Senator and some state office vacancies).

[¶5]   Even though the members of the Williams Group were not precinct committeepersons (i.e., members of the Central Committee), they were outgoing Central Committee officers. As outgoing chairman of the Central Committee, Mr. Williams presided over the 2021 election. After obtaining approval from the Wyoming Republican Party, he allowed the members of the Williams Group to vote for new Central Committee officers and state committeepersons under Uinta County Republican Party Bylaw Art. III, § 9(2) (Bylaw § 9(2)):

2

> Duly elected officers, including Chairman, Vice-Chairmen, Secretary-Treasurer and State Committeeman and State Committeewoman, who are not precinct committeemen or committeewomen, shall be entitled to vote at the Uinta County Central Committee meetings.

Bylaw § 9(2).[1] Ms. Jackson was elected county chairman, Mr. Allred was elected state committeeman, and Ms. Williams was elected state committeewoman. They, therefore, represented the Uinta County Republican Party in the state central committee. Mr. Conrad filed complaints with the Wyoming Republican Party State Central Committee Investigation Committee (IC), the Uinta County Clerk, and the Wyoming Secretary of State claiming the voting procedure used at the 2021 election was improper. The IC determined the voting procedure was proper, and neither the Uinta County Clerk nor the Wyoming Secretary of State found election misconduct.

[¶6] A little over a month after the 2021 election, the Conrad Group filed a complaint in the district court against the Uinta County Republican Party and the Williams Group (hereinafter referred to collectively as the "Uinta County Republican Party" or "Party") seeking a declaration that § 22-4-105 did not permit the outgoing officers, who were not members of the Central Committee, to vote. The Conrad Group asserted the four additional voters swayed the 2021 election. They also requested the Williams Group be permanently enjoined from exercising any "duties or rights afforded to county chairman, state committeeman or state committeewoman" and the district court order a proper election be held "on an expedited basis."[2]

[¶7] The Uinta County Republican Party generally admitted the facts underlying the Conrad Group's declaratory judgment complaint but maintained the 2021 election was proper under § 22-4-105 and Bylaw § 9(2). The two sides filed opposing motions for summary judgment. The Uinta County Republican Party claimed the issue regarding who could vote in the 2021 election was not justiciable because it was an internal political party matter. In the alternative, it argued § 22-4-105 and Bylaw § 9(2) authorized the voting procedure used at the 2021 election and, to protect its constitutional right to political association, § 22-4-105 must be read as allowing it to adopt and use the bylaw governing who may vote. The Conrad Group maintained the 2021 election issue was not exempt from judicial review as an internal party matter. It also asserted the voting procedure under Bylaw § 9(2) used in the election violated the clear and unambiguous language of § 22-4-

---

[1] The Conrad Group focuses its argument on whether Bylaw § 9(2) was consistent with § 22-4-105. It does not argue the Williams Group members were not "duly elected officers" under Bylaw § 9(2). There is also no clear explanation in the record about if or why Mr. Williams continued to preside over the meeting after his successor was elected, the order in which the new officers were elected, or whether the outgoing officers were permitted to vote after their replacements had been elected.

[2] The Conrad Group also filed a motion for a preliminary injunction and temporary restraining order, which the district court denied.

3

105 and the statute did not interfere with the Party's constitutional right to freedom of political association.

[¶8]    The district court granted summary judgment in favor of the Uinta County Republican Party and denied the Conrad Group's opposing motion for summary judgment. It generally ruled that allowing the Williams Group to vote for the Central Committee officers and state committeepersons was appropriate under Bylaw § 9(2), the bylaw did not violate the plain language of § 22-4-105, and the statute should not be read in a way that violates the Uinta County Republican Party's constitutional right to freedom of association. The Conrad Group filed a timely notice of appeal.[3]

## STANDARD OF REVIEW

[¶9]    Wyoming Rule of Civil Procedure (W.R.C.P.) 56(a) authorizes a district court to grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "We review the district court's summary judgment order de novo." *Wiese v. Riverton Mem'l Hosp., LLC,* 2022 WY 150, ¶ 30, 520 P.3d 1133, 1141-42 (Wyo. 2022) (citing *Kappes v. Rhodes,* 2022 WY 82, ¶ 14, 512 P.3d 31, 35 (Wyo. 2022)).  We consider the same materials and apply the same legal standard as the district court and consider the factual record in favor of the party opposing the motion.  *Id.,* ¶ 30, 520 P.3d at 1142 (citing *Kappes,* ¶ 14, 512 P.3d at

---

[3] Although neither side has raised the issue, we would be remiss if we did not acknowledge that any issue concerning the validity of the 2021 election is likely moot.  Under § 22-4-105, county central committees meet each odd-numbered year to elect new officers.  Uinta County Republican Party Bylaw Art. III, § 6(1) directed the Central Committee to hold its election in March of each odd-numbered year.  Given 2023 is an odd-numbered year and the month of March has passed, the Central Committee has likely met and elected new officers.

> "The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties."

*Cir. Ct. of Eighth Jud. Dist. v. Lee Newspapers,* 2014 WY 101, ¶ 10, 332 P.3d 523, 527 (Wyo. 2014) (quoting *Sw. Pub. Serv. Co. v. Thunder Basin Coal Co.,* 978 P.2d 1138, 1143 (Wyo. 1999)) (some citations and quotation marks omitted).  Although we typically dismiss moot cases, the rule is not absolute.  *Id.,* ¶ 12, 332 P.3d at 528.  We may decide technically moot cases when, inter alia, "the 'controversy is capable of repetition yet evading review.'"  *Id.* (quoting *Operation Save Am. v. City of Jackson,* 2012 WY 51, ¶¶ 22-23, 275 P.3d 438, 448–49 (Wyo. 2012)).  Given Central Committee officer and state committeeperson elections occur every other year, "the duration of the challenged action" is "too short for completion of [the] litigation prior to its cessation or expiration."  *Id.,* ¶ 15, 332 P.3d at 528 (citation omitted).  It is also reasonable to expect that at least some of "the same complaining part[ies] will be subjected to the same action again."  *Id.*  We will, therefore, decide this case.

35). Although the two sides' renditions of what occurred at the 2021 election differ in some respects, neither side argues there are disputes of material fact related to the issues on appeal. Thus, we are addressing only questions of law, for which our review is de novo. *Schwartz v. State,* 2021 WY 48, ¶ 9, 483 P.3d 861, 864 (Wyo. 2021).

## DISCUSSION

### *Judicial Abstention from Deciding a Political Question*

[¶10] The Conrad Group argues the district court misinterpreted § 22-4-105 when it concluded the Uinta County Republican Party properly used Bylaw § 9(2) to allow the Williams Group to vote in the 2021 election. The Party claims we should abstain from addressing the Conrad Group's argument because it relates to an internal dispute within a political party. In support of its argument, the Party directs us to 29 C.J.S. *Elections* § 175, which states: "Courts generally view the internal issues arising within political parties as best resolved within the party organization itself; therefore, judicial involvement should only be undertaken as a last resort." *Id.* (footnote omitted). *See also, State ex rel. Holland v. Moran,* 865 S.W.2d 827, 832 (Mo. Ct. App. 1993) ("The best forum for political party disputes is the party itself and the courts are the last resort in such matters, and any encroachment should be done with caution, if at all." (citing Virginia E. Sloan, *Judicial Intervention in Political Party Disputes: The Political Thicket Reconsidered,* 22 UCLA 622, 624 (1975))); *Irish v. Democratic-Farmer-Labor Party of Minn.,* 399 F.2d 119, 120 (8ᵗʰ Cir. 1968) ("The courts, generally and consistently, have been reluctant to interfere with the internal operations of a political party.") (citations omitted). *See generally, Rock v. Lankford,* 2013 WY 61, ¶ 26, 301 P.3d 1075, 1082 (Wyo. 2013) ("'[C]ourts are, and should be, reluctant to interject themselves in essentially political controversies . . . .'" (quoting *Gore v. Harris,* 772 So.2d 1243, 1249 (Fla. 2000), *rev'd on other grounds by Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000))).

[¶11] We agree courts generally abstain from deciding intra-party disputes. In *LaRouche v. Fowler,* 152 F.3d 974, 979-81 (D.C. Cir. 1998), the D.C. Circuit explained the role of the judiciary in disputes involving political parties. "'[A] court[] may not constitutionally substitute its own judgment for that of [a political party].'" *Id.* at 980 (quoting *Democratic Party v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 123-24, 101 S.Ct. 1010, 1020, 67 L.Ed.2d 82 (1981)). For example, "'[t]he stringency, and wisdom, of membership requirements is for the association and its members to decide-not the courts[.]'" *Id.,* 152 F.3d at 980 (quoting *LaFollette,* 450 U.S. at 123 n.25, 101 S.Ct. at 1020 n.25). Thus, a simple intra-party dispute over the application of internal party rules would not be justiciable because there are no "judicially discoverable and manageable standards for resolving it," which is one criterion for a nonjusticiable political question. *LaRouche,* 152 F.3d at 980.

[¶12] However, this "hands-off" approach to political party disputes is qualified when a

state has legislated political party governance. A court may consider political party matters to "the extent that jurisdiction is conferred by statute or . . . the subject is regulated by statute . . . ." 29 C.J.S. *Elections* § 175. *See also, Holland,* 865 S.W.2d at 832 (courts will abstain from interfering with disputes within political parties unless there is a constitutional or statutory right involved). It can determine whether a political party's internal rules comply with applicable statutory language because there is a judicially discoverable and manageable standard for resolution of the issue. *LaRouche,* 152 F.3d at 980-81. The *LaRouche* court, for instance, ruled the "application of the [federal] Voting Rights Act's language to the facts of the [Democratic] Party's delegate-selection rules is a typical judicial exercise." *Id.*

[¶13] When the issue is properly raised, a court may also decide whether a state has over-stepped constitutional limitations by statutorily regulating political parties. *LaRouche,* 152 F.3d at 981. Determining whether a statute violates the constitution has been a matter for judicial consideration since the United States Supreme Court decided *Marbury v. Madison* in 1803. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). "'Declaring the validity of statutes in relation to the constitution is a power vested in the courts as one of the checks and balances contemplated by the division of government into three departments[,] legislative, executive and judicial.'" *Gordon v. State Capitol Bldg. Rehab.,* 2018 WY 32, ¶ 55, 413 P.3d 1093, 1109 (Wyo. 2018) (quoting *Washakie Cnty. Sch. Dist. No. One v. Herschler,* 606 P.2d 310, 318 (Wyo. 1980) (which cited Wyo. Const. art. 2, § 1 and *Marbury*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60)). "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury,* 5 U.S. (1 Cranch) at 177. A court should not avoid this responsibility merely "'because the issues have political implications.'" *Zivotofsky v. Clinton,* 566 U.S. 189, 196, 132 S.Ct. 1421, 1428, 182 L.Ed.2d 423 (2012) (quoting *INS v. Chadha,* 462 U.S. 919, 943, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)).

[¶14] For example, in *Eu v. San Francisco Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 222-33, 109 S.Ct. 1013, 1020-25, 103 L.Ed.2d 271 (1989), the United States Supreme Court considered whether California statutes which banned political parties from endorsing candidates for the primary election and regulated the internal organization of political parties violated the political party's freedom of association under the First and Fourteenth Amendments to the United States Constitution. In *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 210-25, 107 S.Ct. 544, 546-54, 93 L.Ed.2d 514 (1986), the Supreme Court declared unconstitutional a Connecticut law which prohibited the Republican Party from adopting a party rule permitting independent electors to vote in the party's primary elections. The law improperly infringed on the political party's constitutional right to "enter into political association with individuals of its own choosing." *Id.* at 211, 107 S.Ct. at 546. Thus, a constitutional challenge to a state law regulating political parties, when properly presented, "raise[s] a justiciable controversy under the Constitution . . . ." *Williams v. Rhodes,* 393 U.S. 23, 28, 89 S.Ct. 5, 9, 21 L.Ed.2d 24 (1968). A decision in such a case "reflects the [proper] exercise of judicial review,

rather than the abstention from judicial review that would be appropriate in the case of a true political question." *U.S. Dep't of Com. v. Mont.,* 503 U.S. 442, 458, 112 S.Ct. 1415, 1425, 118 L.Ed.2d 87 (1992) (emphasis omitted).

[¶15]  In Wyoming, the election of political party officers is regulated by statute.  *See* § 22-4-105, *supra.  See also,* Wyo. Stat. Ann. § 1-37-103 (LexisNexis 2021) ("Any person . . . whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute . . . may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations."). The issues of whether Bylaw § 9(2) complies with § 22-4-105 and whether the statute is constitutional are appropriate matters for judicial determination, provided they are properly presented.

### Section 22-4-105

[¶16]  The Conrad Group asserts the district court incorrectly interpreted § 22-4-105 as authorizing the Uinta County Republican Party to adopt Bylaw § 9(2), which the Williams Group used to permit outgoing officers who were not members of the Central Committee to vote in the 2021 election.  We review the district court's interpretation of a statute as a matter of law, applying the de novo standard of review.  *In re Est. of Britain,* 2018 WY 101, ¶ 15, 425 P.3d 978, 982-83 (Wyo. 2018).  Our goal in interpreting statutes is to determine the legislature's intent.  *Id.*  We begin by considering the plain and ordinary meaning of the words used by the legislature.  *Ailport v. Ailport,* 2022 WY 43, ¶ 22, 507 P.3d 427, 437 (Wyo. 2022).  *See also, Butler v. State,* 2015 WY 119, ¶ 7, 358 P.3d 1259, 1262 (Wyo. 2015) (When interpreting a statute, we seek the legislature's intent "as reflected in the plain and ordinary meaning of the words used in the statute.") (citation omitted).  "We 'give effect to the most likely, most reasonable, interpretation of the statute, given its design and purpose.'"  *In re VS,* 2018 WY 119, ¶ 41, 429 P.3d 14, 25-26 (Wyo. 2018) (quoting *Adekale v. State,* 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015), and *Rodriguez v. Casey,* 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)) (some quotation marks omitted).  Statutory provisions are interpreted "*in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection."  *In re VS,* ¶ 41, 429 P.3d at 26 (quoting *TW v. State,* 2017 WY 26, ¶ 12, 390 P.3d 357, 360 (Wyo. 2017)) (other citations, quotation marks, and italics omitted).  "'If the [statutory language] is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning.'"  *Ailport,* ¶ 22, 507 P.3d at 437 (quoting *In re CRA,* 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016)) (other citations omitted).

[¶17]  To reiterate, the relevant portion of § 22-4-105 states:

> The county central committee shall meet at the county seat each odd-numbered year at a time and place determined by the county chairman. . . .  At the meeting, *the county central*

*committee shall elect* the chairman of the county central committee, one (1) state committeeman and one (1) state committeewoman and *other offices as provided by the party bylaws.*

(Emphasis added).

[¶18]   The district court ruled the language of § 22-4-105 was clear and unambiguous and did not "restrict[] or penalize[] voting by others who are not members of the [C]entral [C]ommittee."  Under the court's reading, § 22-4-105 did not prevent the Uinta County Republican Party from enacting Bylaw § 9(2) to allow outgoing officers who were not members of the Central Committee to vote in the 2021 election of new officers.  The district court stated that, to restrict the voting to members of the Central Committee, the legislature would have had to insert "only members of" into the statutory language, i.e., the statute would read:  "At the meeting, [only members of] the county central committee shall elect . . . ."  The court reasoned the legislature did not "so limit the statute, and the [c]ourt is not free to add language to W.S. § 22-4-105."

[¶19]   We agree the statutory language is clear and unambiguous, but we disagree with the district court's conclusion that it allowed the Uinta County Republican Party to adopt Bylaw § 9(2) to expand who could vote in Central Committee elections.  The statute specifically and plainly states "the county central committee shall elect" the central committee officers and state committeepersons.  Section 22-4-105.  While the district court was correct that courts "may not add language to a statute under the guise of statutory interpretation," *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 44, 486 P.3d 964, 976 (Wyo. 2021) (citation and quotation marks omitted), it was unnecessary for the legislature to add "only members of" to § 22-4-105 to limit the eligible voters.  The statute clearly designated a specific group of people who could vote – the county central committee.  That committee is made up of precinct committeepersons elected in the preceding year's primary.  Section 22-4-101(b).  By specifying the county central committee as who "shall elect" its officers, the legislature chose to restrict the eligible voters in such elections.

> [A] statute "that enumerates the subjects or things on which it is to operate, or the persons affected . . . [excludes] from its effect all those not expressly mentioned. *Cathcart v. Meyer*, 2004 WY 49, ¶ 40, 88 P.3d 1050, 1066 (Wyo. 2004) (citing *In re West Highway Sanitary & Imp. Dist.*, 77 Wyo. 384, 317 P.2d 495, 504 (1957)).  *See also The Adeline*, 13 U.S. (9 Cranch) 244, 253, 3 L.Ed. 719 (1815) ('Now the construction must depend on the evident meaning and intent of the legislature, as clearly to be gathered from a view of the whole provision; and it may be adopted as a fundamental rule, that where there is an

8

express provision, there shall not be a provision by implication; *expressio unius est exclusio alterius*.')."

*Gordon,* ¶ 24, 413 P.3d at 1102 (quoting *Walters v. State ex rel. Wyo. Dep't of Transp.*, 2013 WY 59, ¶ 18, 300 P.3d 879, 884 (Wyo. 2013)).

[¶20]   By allowing the Uinta County Republican Party to expand those eligible to vote for the Central Committee officers and state committeepersons, the district court rendered the legislature's specific choice of the county central committee as the voters meaningless.  We do not interpret a statute "in a way that renders a portion of it meaningless . . . ."  *Miller v. Life Care Ctrs. of Am., Inc.,* 2020 WY 155, ¶ 26, 478 P.3d 164, 171-72 (Wyo. 2020) (citing *MF v. State,* 2013 WY 104, ¶ 11, 308 P.3d 854, 858 (Wyo. 2013)) (other citation omitted).  *See also, Vance v. City of Laramie,* 2016 WY 106, ¶ 23, 382 P.3d 1104, 1110 (Wyo. 2016) (the legislature intended to limit judicial review to the types of decisions expressly listed); *Pedro/Aspen, Ltd. v. Bd. of Cnty. Comm'rs for Natrona Cnty.*, 2004 WY 84, ¶ 27, 94 P.3d 412, 420 (Wyo. 2004) (if the court accepted Natrona County's argument that the statute should be interpreted as allowing it to regulate parcels of land that did not meet the statutory definition of "subdivision," the definition and list of exemptions would be meaningless).   Applying these principles to § 22-4-105, the legislature made a meaningful choice to specify the county central committee as the voters for county central committee officer and state committeeperson elections and that choice excludes all others. The district court erred by concluding otherwise.

[¶21]   The Uinta County Republican Party argues, in the alternative, it was entitled to use its bylaws to expand the list of voters entitled to elect the Central Committee officers and state committeepersons because the phrase "as provided by the party bylaws" found in § 22-4-105 modifies "shall elect."  While the district court ruled there was no constraint on who the Party could, through the adoption of bylaws, allow to vote in Central Committee elections, it rejected this interpretation of the statute.  It explained that if the legislature had intended the "'as provided by the party bylaws' [language] to act as [an] instruction as to how the county central committee should carry out the election," it would have positioned the phrase differently within the sentence.  According to the court, the legislature would have drafted the statute to say:  "At the meeting, the county central committee shall elect, as provided by the party bylaws, the chairman . . . ."  The court concluded it was "not free to shuffle the words in W.S. § 22-4-105 to manufacture a particular meaning."  We agree with this aspect of the district court's interpretation of § 22-4-105.  Statutory language must be interpreted in accordance with the legislature's arrangement and connection of the words.  *In re VS,* ¶ 41, 429 P.3d at 26 (citation omitted).  The legislature chose to place the "as provided by the party bylaws" language at the end of the sentence rather than adjacent to "shall elect."  We will not interpret the statute as if the legislature had arranged the words differently.

[¶22]   The district court also correctly stated the phrase "as provided by the party bylaws" referred only to its direct antecedent – "other offices."  The placement of commas in § 22-4-105 supports this interpretation.  Under general grammar rules, when a modifying phrase is separated "from the preceding language by a comma," the phrase is intended to modify "all preceding phrases."  *Waid v. State ex rel. Dep't of Transp.,* 996 P.2d 18, 23 (Wyo. 2000).  However, if "the . . . comma [is] not present, the language [is] properly . . . construed as modifying only the immediately preceding phrase."  *Id.* (citing *Tietema v. State,* 926 P.2d 952, 954 (Wyo. 1996)).  In § 22-4-105, the phrase "as provided by the party bylaws" modifies only the preceding phrase "other offices" because there is no comma separating them.  Thus, a political party may, through its bylaws, establish additional central committee offices, but it may not use its bylaws to expand who can vote in the county central committee officer and state committeeperson elections.  If the legislature had intended for "as provided by the party bylaws" to apply to all preceding phrases, including "shall elect," it would have placed a comma after "other offices."

[¶23]   While the Uinta County Republican Party acknowledges the general rule, it points to other language from *Waid* as establishing the rule is not immutable.  *Waid* stated:  "[T]he rule [on placement of commas] is [just] another aid to discovery of intent or meaning and is not inflexible and uniformly binding.  Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent."  *Waid,* 996 P.2d at 23 (quoting 2A *Sutherland Statutory Construction* § 47.33 at 270 (5th ed. 1992)) (footnotes omitted).  The Uinta County Republican Party maintains the legislature's frequent reference to party bylaws or rules in the Election Code shows it intended the phrase "as provided by the party bylaws" to apply to the whole of § 22-4-105.  *See, e.g.,* Wyo. Stat. Ann. § 22-4-103 (LexisNexis 2021) (reference to party bylaws in filling county central committee vacancies), § 22-4-110 (reference to party bylaws regarding the composition of the state central committee), § 22-4-111 (LexisNexis 2021) (reference to party rules for state central committee organizational meeting).  According to the Party, "it is evident that the legislature intended to defer to the major political parties on almost all internal voting matters . . . ."  We reject that position, as it would render meaningless the legislature's specific statement about who could vote for the county chairman and state committeepersons.  If the legislature intended to cede all internal party voting matters to the political parties, it would have expressly done so and foregone enacting statutory provisions directing various aspects of party governance.

[¶24]   Section 22-4-105 is entirely clear when the general rules of statutory interpretation and grammar are applied.   All county central committee officers and state committeepersons are elected by the county central committee, alone.  The district court erroneously concluded the Uinta County Republican Party acted within its statutory authority by enacting Bylaw § 9(2) and using it to allow the Williams Group to vote in the 2021 election.

### *Constitutional Right to Freedom of Political Association*

[¶25]   The Uinta County Republican Party insists that, if we do not interpret § 22-4-105 as allowing it to adopt Bylaw § 9(2) to expand who may vote for the Central Committee officers and state committeepersons, the statute violates its constitutional right to freedom of political association.

[¶26] Freedom of association is protected from infringement by federal and state governments through the First and Fourteenth Amendments to the United States Constitution. *Williams,* 393 U.S. at 30-31, 89 S.Ct. at 10 (the United States Supreme Court has "repeatedly held that freedom of association is protected . . . against federal encroachment by the First Amendment[.]"  This freedom is also "entitled under the Fourteenth Amendment to the same protection from infringement by the States.").  *Id.* Partisan political organizations are entitled to freedom of association, and state legislatures have no right to interfere with that right by implementing overly burdensome statutory requirements.  *See Eu,* 489 U.S. at 224-26, 109 S.Ct. at 1020-22; *Tashjian*, 479 U.S. at 214-15, 107 S.Ct. at 548-49.

> Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, *Tashjian*, 479 U.S. at 214, 107 S.Ct. at 548 (quoting *Kusper* [*v. Pontikes,*] 414 U.S. [51,] 57, 94 S.Ct. [303,] 307[, 38 L.Ed.2d 260 (1973)]), but also that a political party has a right to "'identify the people who constitute the association,'" *Tashjian, supra,* 479 U.S., at 214, 107 S.Ct., at 548 (quoting *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981)); cf. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460–462, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958), and to select a "standard bearer who best represents the party's ideologies and preferences." *Ripon Society, Inc. v. National Republican Party,* 173 U.S.App.D.C. 350, 384, 525 F.2d 567, 601 (1975) (Tamm, J., concurring in result), cert. denied, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

*Eu,* 489 U.S. at 224, 109 S.Ct. at 1020-21.  "As a result, political parties' government, structure, and activities enjoy constitutional protection." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997) (citing *Eu,* 489 U.S. at 230, 109 S.Ct. at 1024) (other citation omitted).  A state "cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure . . . ." *Eu,* 489 U.S. at 233, 109 S.Ct. at 1025.  Nevertheless, "it is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-and campaign-related disorder." *Timmons,* 520 U.S. at 358, 117 S.Ct. at

11

1369 (citing *Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.")) (other citation and quotation marks omitted).

[¶27]  In *Utah Rep. Party v. Cox*, 892 F.3d 1066, 1077 (10ᵗʰ Cir. 2018), the Tenth Circuit explained that a balancing test commonly known as the *Anderson-Burdick* test applies when a political party claims a statute violates its right to freedom of association.  Under that test,

> "a court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the [political party] seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the [political party's] rights."

*Cox,* 892 F.3d at 1077 (quoting *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063, and *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)) (some quotation marks omitted).  If a regulation is found to impose "severe burdens" on a political party's associational rights, it must be "narrowly tailored to serve a compelling state interest."  *Clingman v. Beaver,* 544 U.S. 581, 586, 125 S.Ct. 2029, 2035, 161 L.Ed.2d 920 (2005) (citing *Timmons,* 520 U.S. at 358, 117 S.Ct. 1364).  "However, when regulations impose lesser burdens, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'"  *Clingman,* 544 U.S. at 586-87, 125 S.Ct. at 2035 (quoting *Timmons,* 520 U.S. at 358, 117 S.Ct. 1364).

[¶28]  The constitutionality of § 22-4-105 has not been properly challenged in this case. The Conrad Group's declaratory judgment complaint sought *enforcement* of § 22-4-105. It did not present any constitutional challenge to the State's regulation of political parties through enactment of § 22-4-105.  The Uinta County Republican Party did not file a counterclaim seeking a declaration that § 22-4-105 was unconstitutional.  Without a clear challenge to the constitutionality of § 22-4-105, we cannot conduct a full analysis of § 22-4-105 under the *Anderson-Burdick* balancing test.

[¶29] Furthermore, if the Uinta County Republican Party wished to challenge the constitutionality of § 22-4-105, the Wyoming Attorney General should have been joined as a party to these proceedings.  Under Wyo. Stat. Ann. § 1-37-113 (LexisNexis 2021), "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . .  If the statute, ordinance or franchise

12

is alleged to be unconstitutional, the attorney general of the state shall be served with a copy of the proceeding and may be heard." Similarly, Wyoming Rule of Appellate Procedure (W.R.A.P.) 7.07 states that when "a statute, ordinance or franchise is alleged to be unconstitutional, . . . counsel shall . . . serve a copy of the [appellate] brief upon the attorney general. Within 45 days of service of such brief, the attorney general may file a brief."

[¶30] As we explained in *Ririe v. Bd. of Trs. of Sch. Dist. No. One, Crook Cnty,* 674 P.2d 214, 219 (Wyo. 1983): "'The attorney general, being the chief legal officer of the State, has a duty to protect the interests and the welfare of the people in declaratory judgment actions where statutory constitutional questions are in issue. [*Tobin v. Pursel,*] 539 P.2d [361,] 365 [(Wyo. 1975)].' . . . [W.R.A.P. 7.07] was adopted to permit the attorney general to react to all challenges to the constitutionality of Wyoming statutes." *Id.* Without the participation of the Wyoming Attorney General, we can only speculate as to the State's position regarding the interests it has in regulating political party officer elections under § 22-4-105. We refuse to consider a constitutional challenge to a statute when the issue has not been properly raised or litigated.

## CONCLUSION

[¶31] The issues in this case are justiciable because they present classic questions for judicial resolution, including the interpretation and application of a statute. The clear and unambiguous language of § 22-4-105 only allowed members of the Uinta County Republican Party's Central Committee, made up of duly elected precinct committeepersons, to vote in the 2021 election for Central Committee officers and state committeepersons. The Uinta County Republican Party was not authorized by the statute to adopt Bylaw § 9(2) which expanded the eligible voters in Central Committee elections, and the Party violated § 22-4-105 by allowing the outgoing Central Committee officers to vote in the 2021 election. The issue of whether § 22-4-105 infringes upon the Uinta County Republican Party's constitutional right to freedom of association is not properly before this Court.

[¶32] Reversed and remanded for further proceedings consistent with this decision.